OLIVER CONSTRUCTION COMPANY v. WILLIAMS.

## Opinion delivered March 13, 1922.

1. HIGHWAYS—STATUTORY BOND OF CONTRACTOR.—It was the evident purpose of Crawford & Moses' Dig., § 6913, to substitute the obligation of a bond given by the contractor on public work for the security given by the statutory lien in the case of property of private individuals.

2. BONDS—PUBLIC IMPROVEMENT CONTRACTOR—CONSTRUCTION.—Under Crawford & Moses' Dig., § 6913, providing that whenever public officers let a contract for any public improvements or public buildings a bond shall be taken from the contractor conditioned that the contractor "shall pay all indebtedness for labor or materials furnished in the construction of said public building or in making said public improvements," held that such statute should be liberally construed to protect laborers and material-men, whether the work was done or materials furnished directly to the contractor or to a sub-contractor.

3. HIGHWAYS—CONTRACTOR'S BOND—LIABILITY.—Crawford & Moses' Dig., § 6913, requiring a contractor on public work to give bond conditioned to pay all indebtedness for labor or materials furnished, is broad enough to include laborers who have performed work for a subcontractor who furnished labor or materials which the original contractor had obligated himself to furnish, under a contract with a road improvement district.

4. HIGHWAYS—EFFECT OF CONTRACTOR GIVING BOND.—The giving of the bond required by Crawford & Moses' Dig., § 6913, adds nothing to the obligation of the contractor, but adds sureties to his obligation and thus effectively protects those furnishing labor and materials.

5. HIGHWAYS—BONDS OF CONTRACTOR.—The bond required by Crawford & Moses' Digest, § 6913, is intended to protect laborers and materialmen, and serves a different purpose from the bond in favor of the Conway and Damascus Road Improvement District of Faulkner County, which is prescribed by the special act creating such district, and is not repealed by such special act.

Appeal from Faulkner Circuit Court, *George W. Clark*, Judge; affirmed.

### STATEMENT OF FACTS.

G. C. Williams brought suit in the circuit court against the Oliver Construction Company to recover the sum of $1,811.25 alleged to be due him for labor done and

materials furnished to improve the Conway and Damascus road in Faulkner County, Ark.

The suit is based upon the provisions of the contract between the Oliver Construction Company and the road district. The defendant admitted that it entered into a contract with the road improvement district for the construction of the Conway and Damascus road, but denied liability to the plaintiff under the contract. On the 9th day of August, 1920, the Oliver Construction Company entered into a written contract with the Conway and Damascus Road Improvement District of Faulkner County, Ark., to construct and improve the road from Conway to Damascus in Faulkner County, Ark.

Sec. 4 of the contract reads as follows: "The contractor shall pay promptly, when due, for all work and labor done and material, machinery, appliances and supplies of every kind and nature furnished and used in and about the work contemplated in this contract; and the contractor shall file, within ten days after receiving notice provided for in paragraph ten of this contract, a bond as provided by section two of act 446 of the General Assembly of Arkansas, approved June 2, 1911. Should the contractor fail to file said bond, the board may at its option require the contractor to file at such times as it may direct, with it, written receipts and releases from all persons and corporations furnishing any material, labor, machinery or appliances in said work, or any part thereof."

Under section 10 of the contract the Oliver Construction Company is required to enter into a bond with the said road improvement district in the sum of $100,000, conditioned for the faithful performance of the contract by the contractor. Subsequently the Oliver Construction Company entered into a contract with J. F. Rich to construct a part of the road as its sub-contractor.

According to the testimony of G. C. Williams, he made a contract with J. F. Rich to do a part of the work on the road which the Oliver Construction Company had

sublet to Rich. Williams made no contract with the Oliver Construction Company. During the progress of the work, Rich lost his sight in an accident, and, being unable to complete his contract, made a settlement with the Oliver Construction Company. The Oliver Construction Company refused to pay Williams for the work done and the materials furnished by him pursuant to his contract with Rich.

Evidence was adduced by the Oliver Construction Company tending to show that Rich and Williams were partners in the work; but this is contradicted by the evidence for Williams. The Oliver Construction Company paid Rich for the work done by him under his contract.

The jury returned a verdict for the plaintiff, and from the judgment rendered the defendant has prosecuted an appeal to this court.

*Coleman, Robinson & House,* for appellant.

Neither the plaintiff below nor the subcontractors had any connection with either party to the contract, the appellant and the road improvement district, and he is not entitled to recover under that contract. 121 Ark. 414; 128 *Id.* 149; 101 *Id.* 223.

*George F. Hartje,* for appellee.

The contract, under the statute, act 446, approved June 2, 1911, which the parties had in mind, as evidenced by paragraph 4, and the provision with reference to the bond therein contained, was for the protection, and inures to the benefit, of all persons who furnished labor or materials in constructing the improvements contemplated by the act creating the district. Plaintiff is entitled to recover under that contract. 126 Ark. 474. The general lien law would have no application, as it expressly exempts public and quasi-public corporations from its operation. C. & M. Digest, §§ 4273, 4274; 38 Neb. 743, 57 N. W. 539; 43 Neb. 649, 62 N. W. 50.

It makes no difference that appellant's name was not inserted, or that he was personally unknown to the parties

to the contract, as he is a member of a class sufficiently described in the contract. 36 Kan. 246, 13 Pac. 398; 119 Mo. 304, 24 S. W. 784; 124 N. C. 328, 32 S. E. 720, 46 L. R. A. 513.

HART, J. (after stating facts). It was the theory of the plaintiff that the Oliver Construction Company was liable to him under section 4 of its contract with the road improvement district. The court adopted this theory of the case in its instructions to the jury. The court told the jury that, although the plaintiff was not a party to the contract, if he did any work and labor or furnished any materials towards the construction of the road, he had a cause of action against the defendant for such work or materials, as he had proved that he had earned under the contract fixing the compensation for work and labor done.

The court also instructed the jury that, if it found that the plaintiff and Rich were partners in the work on the road, plaintiff was bound by the settlement of Rich with the defendant.

The court further instructed the jury that the Oliver Construction Company would not be liable for any work done or materials furnished beyond the prices fixed in the contract between it and the district.

It is conceded by counsel for the defendant that the right of the plaintiff to recover depends upon the construction to be given to section four of the contract between the road improvement district and the Oliver Construction Company copied in our statement of facts.

In *Reiff* v. *Redfield School Board*, 126 Ark. 474, the facts were that the directors of the school district entered into a contract with the contractor for the construction of a schoolhouse. The contractor gave the bond required by § 6913 of Crawford & Moses' Digest. He failed to pay certain persons for materials furnished and used in the construction of the building. The materialmen were allowed to recover against the contractor and his sureties. The court held that where a bond is executed pursuant to the statute it shall inure to the benefit of

those furnishing labor and materials, and that an action may be maintained thereon by one of such persons to recover for services performed or materials supplied in the fulfillment of the contract.

Section 6913 of Crawford & Moses' Digest reads as follows: "Whenever any public officer shall, under the laws of this State, enter into a contract in any sum exceeding one hundred dollars, with any person or persons, for the purpose of making any public improvements, or constructing any public building, or making any repairs on the same, such officer shall take from the party contracted with a bond with good and sufficient sureties to the State of Arkansas, in a sum not less than double the sum total of the contract, whose qualifications shall be verified, and such sureties shall be approved by the clerk of the circuit court in the county in which the property is situated, conditioned that such contractor or contractors shall pay all indebtedness for labor and material furnished in the construction of said public building, or in making said public improvements."

It will be noted that the section includes making any public improvement as well as constructing any public building. This court has always given a liberal interpretation to statutes giving liens to those furnishing labor and materials used in the construction of private buildings.

As against the road improvement district, no lien is provided by statute, and it was the evident purpose of § 6913 of the Digest to substitute the obligation of a bond for the security given by the statutory lien in the case of the property of private individuals. Such statutes and contracts made under them should receive a liberal interpretation in order to effectuate the beneficent object intended. The obligation of the bond, when construed in the light of the statute requiring its execution, is for the protection of laborers and materialmen, and under the statute is conditioned that the contractor shall pay all the indebtedness for labor and materials

furnished in the construction of said public building or in making said public improvement.   The language is broad enough to include laborers who have performed work for a sub-contractor, who furnished labor or materials which the original contractor had obligated himself to furnish.  *Hill* v. *American Surety Co.*, 200 U. S. 197.

The statute under consideration in that case provides in substance that persons entering into formal contracts with the United States for the construction or repair of public buildings and works shall be required, before performing such work, to execute the usual penal bond with good and sufficient sureties with the additional obligation "that such contractor or contractors shall promptly make payments to all persons supplying him or for labor or materials in the prosecution of the work provided in such contracts."

In construing it the court said:   "Language could hardly be plainer to evidence the intention of Congress to protect those whose labor or material has contributed to the prosecution of the work.  There is no language in the statute nor in the bond which is therein authorized limiting the right of recovery to those who furnish material or labor directly to the contractor, but all persons supplying the contractor with labor or materials in the prosecution of the work provided for in the contract are to be protected.  The source of the labor or material is not indicated or circumscribed.  It is only required to be 'supplied' to the contractor in the prosecution of the work provided for.  How supplied is not stated, and could only be known as the work advanced and the labor and material are furnished."

Again the court said:  "The obligation is 'to make full payments to all persons supplying it with labor or materials in the prosecution of the work provided for in said contract.'  The language, read in the light of the statute, looks to the protection of those who supply the labor or materials provided for in the contract, and not

to the particular contract or engagement under which the labor or materials were supplied. If the contractor sees fit to let the work to a sub-contractor, who employs labor and buys materials which are used to carry out and fulfill the engagement of the original contract to construct a public building, he is thereby supplied with materials and labor for the fulfillment of his engagement as effectually as he would have been had he directly hired the labor or bought the materials.''

The reasoning of that case controls here. The language of the statute is no stronger than the language used in our own statute. Such statutes are enacted in the exercise of a sound public policy. The contractor gets the benefit of the work done and materials furnished, and the statute requires him to pay for them. The contractor had supervision of the work, and it is easy for him to see what labor and materials are used in the work.

In *Philadelphia* v. *Stewart*, 201 Pa. 526, the reason for the enactment of such statutes is clearly stated as follows: ''Seldom are contractors for large public works able of themselves to furnish the labor and material necessary to the completion of their contracts; in nearly every case they rely on many sub-contractors and materialmen to furnish different kinds of mechanical skill and labor, also material, such as stone, brick, lumber, glass and iron; these have nothing on which to rely for payment except the honesty and ability of the principal contractor. If the contractor of himself do not inspire confidence among these, who must be subordinate to him, his ability in many cases to bid for large work must be weakened or altogether destroyed; as a necessary consequence, competition for work disappears, in large measure, and there follows a monopoly to the few contractors of large capital, with the inevitable result of exorbitant prices. Every one knows that the city will pay the principal contractor, but will he pay his sub-contractors and materialmen, whether he makes or loses on his contract, is the question with them.''

Of course, the giving of the bond under the statute adds nothing to the obligation of the contractor. It only has the effect to add sureties to his obligation and thus more effectively protect those furnishing labor and materials which are used in the construction of the public building or in making the public improvement.

As pointed out in *Reiff* v. *Redfield School Board,* 126 Ark. 474, many cases from the various States in support of the doctrine are cited in a case note to Ann. Cas. 1916-A, at p. 761.

Cases like *Dickinson* v. *McCoppin,* 121 Ark. 414, relied upon by counsel for the defendant, have no application. Section 6913 of the Digest above referred to was a part of act 446 of the Acts of 1911, which was approved June 2, 1911. See General Acts of 1911, p. 462. The facts under which the McCoppin case was decided arose before the passage of the statute, and its construction was not involved, and therefore not discussed or determined.

This seems to have been the construction placed upon the statute by the parties at the time they entered into the contract. It will be noted that section 4 provides for the execution of the bond provided by the statute. Section 10 provides that the contractor shall enter into a bond with the district in the sum of $100,000 conditioned for the faithful performance of the contract. The bond provided by section 4 is for the purpose of securing the laborers and material men in the payment of their claims, and the bond under section 10 is intended to secure the district in the faithful performance of the contract by the contractor. The bond required under the general statute, § 6913, is intended to protect laborers and materialmen, and serves another purpose and operates in a different field than the bond for the faithful performance of the contract in favor of the road district, which is prescribed by the special act creating the road district; and the special act does not repeal the general act.

It follows that the judgment must be affirmed.