(127 So. 805)

**STATE, for Use of WADSWORTH et al., v. SOUTHERN SURETY CO.**

**3 Div. 907.**

Supreme Court of Alabama.
March 20, 1930.

Rehearing Denied April 17, 1930.

114

W. Douglas Arant, Bradley, Baldwin, All & White, and Kingman C. Shelburne, all of Birmingham, for appellants.

Knox, Acker, Sterne & Liles, of Anniston, Hill, Hill, Whiting, Thomas & Rives, Walton H. Hill, and Weil, Stakely & Cater, all of Montgomery, Sims, Deedmeyer & Harrison and F. D. McArthur, all of Birmingham, Farmer, Merrill & Farmer, Lee & Tompkins, and Hill & Calhoun, all of Dothan, and T. B. Ward and J. M. Ward, both of Tuscaloosa, amici curiæ.

R. E. Smith and R. C. Brickell, both of Huntsville, and Goodwyn & Goodwyn, Steiner, Crum & Weil, and Rushton, Crenshaw & Rushton, all of Montgomery, for appellee.

Coleman, Coleman, Spain & Stewart, of Birmingham, amici curiæ.

THOMAS, J.

The original complaint, several petitions for intervention, and demurrers sustained thereto present the questions thoroughly argued by many of counsel. These pleadings, the appeal, and assignments of error directly raise the argued questions.

■ The first is whether the labor, material, gas, oil, tires, feedstuffs, and the supplies named in the complaint or interventions, and alleged to have been used in the execution of the work provided for in the original contract and suretyship, were such as were within the purview of the provisions of the road contractors' bond on which the suit was brought. It will not be necessary that we reexamine this group of assignments of error, or arguments and authorities thereon, other than to say the liberal construction of the statute and the effect of such bond and liability thereunder bring the articles, material, labor, etc., and the value thereof, within the purview of the provisions of the bond under the law. That is, that section 28 of Act of 1927, pp. 348, 356, has been liberally construed to the effect of the manifest purpose of the statute, and that the public interest required such construction. Union Indemnity Co. v. Handley (Ala. Sup.) 124 So. 876;[1] Union Indemnity Co. v. State, for Use of R. S. Armstrong & Bro. Co., 218 Ala. 132, 118 So. 148; Pettus v. Dudley Bar Co., 218 Ala. 163, 118 So. 153; Jefferson County Board of Education v. Union Indemnity Co., 218 Ala. 632, 119 So. 837; Union Indemnity Co. v. State, for Use of McQueen Smith Farming Co., 217 Ala. 35, 114 So. 415. The federal cases are: United States, for Use of Hill, v. Amer. Surety Co., 200 U. S. 197, 26 S. Ct. 168, 50 L. Ed. 437; Mankin. v. United States to Use of Ludowici-Celadon Co., 215 U. S. 533, 30 S. Ct. 174, 54 L. Ed. 315; Brogan v. National Surety Co., 246 U. S. 257, 38 S. Ct. 250, 62 L. Ed. 703, L. R. A. 1918D, 776; Fleischmann Const. Co. v. United States, 270 U. S. 349, 46 S. Ct. 284, 70 L. Ed. 624. We have no desire to recede from the construction given our statute as affecting the classes of "labor, material and supplies" falling within the contractor's bond and its suretyship. Union Indemnity Co. v. State for Use of R. S. Armstrong & Bro. Co., 218 Ala. 132, 118 So. 148, and authorities. We will again advert to perishable materials like gas and oil. The rulings of the trial court in sustaining demurrer to the complaint and interventions are not justified in that the labor, material, and supplies furnished and used by said contractors were not within the purview of the bond under the law.

The second and new question presented and fully argued is whether the original contractor and his sureties are liable for labor, ma-

---

[1] 220 Ala. 292.

116

terial, feedstuffs, gas, oil, tires, etc., that were supplied to, used and consumed by subcontractors of the original contractor, and used, consumed, and employed in the projection of the public work covered by the contract and bond of such original contractor and his sureties. The answer to this phase and grouping *of rulings on demurrer to the original complaint and interventions will require an extended consideration.*

The pertinent provisions of the Alabama statute are taken from the federal statute, as a comparison thereof will show. Some of counsel seem to concede that the state statute was borrowed from the federal statute, others of counsel deny this. However, a display of the essential provisions of the two statutes in parallel columns is a conclusive answer to that difference of opinion among counsel.

| The Federal Statute. | The Alabama Statute. |
|---|---|
| "Any person or persons entering into a formal contract with the United States for the construction of any public building, or the prosecution and completion of any public work * * * shall be required, before commencing such work, to· execute the usual penal bond, with good and sufficient sureties, with the additional obligation that such contractor or contractors shall promptly make payments to all persons supplying him or them with labor and materials in the prosecution of the work provided for in' such contract." U. S. C., Title 40, § 270; United States Code Ann. (1928) and authorities collected. | "Any person, firm or corporation entering into a contract with this State * * * for the * * * construction * * * of any public building or public work * * * shall be·required, before commencing such work, to execute a bond * * * with good and sufficient surety * * * conditioned that such contractor or contractors * * * shall promptly make payment to all persons supplying him or them with labor, material * * * in the execution of the work provided for in such contract." Gen. Acts Ala. 1927, page 356, Sec. 28, approved August 23, 1927; see Acts 1927, page 37, approved February 10, 1927; Acts 1927, p. 394 (adopting the same policy as to counties). |

In the first place, such other portions of the statute that are dissimilar deal with matters of procedure, and, in the second place, the differences are slight variations in unessential phrases. After the enactment of the statute construed in United States, for Use of Hill, v. Amer. Surety Co., 200 U. S. 197, 26 S. Ct. 168, 50 L. Ed. 437 (which was the Act of August 13, 1894, c. 280, 28 Stat. 278), Congress enacted an amendment, being Act of February 24, 1905, c. 778, 33 Stat. 811 (40 USCA § 270). The latter statute introduced the difference of verbiage from the former statute (as appellee's counsel contend constitutes a difference between the Alabama statute and the federal act of August 13, 1894). The federal decisions indicate the difference in phraseology in the two statutes, and to these decisions we now advert.

The Supreme Court of the United States in Mankin v. United States, 215 U. S. 533, 30 S. Ct. 174, 54 L. Ed. 315, affirming 158 F. 1021 (5th C. C. A.), holds that this difference in verbiage was immaterial so far as concerns liability for materials sold to subcontractors; that the rule in the Hill Case, supra, remains unaffected by the amendment. Both the Hill and the Mankin Opinions were written by Mr. Justice Day. The learned Justice said:

"It is the contention of the plaintiffs in error that the act of February 24, 1905, differs from the act of August 13, 1894, *in that a copy of the contract and bond is to be furnished for the purpose of suit to the 'person or persons supplying the contractor with labor and materials,'* * * * whereas, in the act of August 13, 1894, it is provided that *any person or persons making an application therefor,* and furnishing an affidavit to the Department that the labor and materials for the prosecution of such work had been supplied *by him or them,* payment for which had not been made, shall have a certified copy of the contract and bond for the purpose of bringing suit thereon."

That is to say, the insistence was that:

"The additional phrase used in this connection, 'the person or persons supplying the contractor with labor and materials,' it is contended, shows that only those who furnish labor and materials directly to the contractor come within the benefit of the act. We cannot agree with this contention. The phrase, 'person or persons supplying the contractor with labor and materials,' are the words embodied in both statutes alike in the requirement of a bond for their benefit. In the Hill Case [200 U. S. 197, 26 S. Ct. 168, 50 L. Ed. 437] it was distinctly held that 'persons supplying the contractor with labor and materials' *included not only the subcontractor, but anyone who furnished labor and materials to the subcontractor for carrying out the work contracted for.* There is nothing in the provision as to who shall have a copy of the bond for the purpose of suit which changes or limits the obligation of the bond under identical requirements in both statutes, alike embracing, as construed in the Hill Case, persons furnishing labor and materials to a subcontractor." (Italics supplied.) Mankin v. U. S. use of Ludowici-Celadon Co., 215 U. S. 533, 30 S. Ct. 174, 176, 54 L. Ed. 315.

This is an affirmation of the principle enunciated in the Hill Case, that the material requirement of the statute is that the contractor shall give bond to secure payment to persons supplying him with labor, material, and supplies, and that he is as much supplied with material by one selling to the subcontractor who, in turn, supplies it to the contractor, as he would be by one selling directly to the contractor. Upon this, Mr. Justice Day said:

"If a construction is given to the bond so limiting the obligation incurred as to permit only those to recover who have contracted directly with the principal, it may happen that the material and labor which have contributed to the structure will not be paid for, owing to the default of subcontractors, and the manifest purpose of the statute to require compensation to those who have supplied such labor or material will be defeated.

"We cannot conceive that this construction works any hardship to the surety. The contractor gets the benefit of such work or material. * * * The obligation is 'to make full payments to all persons supplying it with labor or materials in the prosecution of the work provided for in said contract.' This language, read in the light of the statute, looks to the protection of those who supply the labor or materials provided for in the contract, and not to the particular contract or engagement under which the labor or materials were supplied. If the contractor sees fit to let the work to a subcontractor, who employs labor and buys materials which are used to carry out and fulfill the engagement of the original contract to construct a public building, he is thereby supplied with the materials and labor for the fulfilment of his engagement as effectually as he would have been had he directly hired the labor or bought the materials." United States, for Use of Hill v. American Surety Co., 200 U. S. 197, 26 S. Ct. 168, 170, 50 L. Ed. 437, 441.

The procedural part of the Alabama statute and that of the federal statute are the same—that of the act of Congress of February 24, 1905. The point strenuously argued, that the Alabama statute gives a right of action to a person supplying the contractor, whereas the original federal statute gives a right of action to any person showing that labor has been supplied (without saying to whom), dissolves upon consideration of the fact that the federal amendment of February 24, 1905, uses the language found in the Alabama statute—that the right of action attaches to a person supplying the contractor. In other words, if there is any dissimilarity between the 1894 act of Congress and the Alabama statute, there is no dissimilarity between the 1905 act of Congress and the Alabama statute; both the Alabama statute and the federal statute of 1905 contain like language in the substantive clause fixing the ob-

ligation of the bond and the remedial clause providing for the right of action. The federal act of 1905 had been construed (in the above-cited case) as giving protection to the person selling to the subcontractor prior to the adoption of the present Alabama highway statute, approved August 30, 1927. When the Alabama Legislature adopted the 1905 federal statute, it adopted the construction given thereto in the Mankin Case, supra. It is beyond successful controversy that the Alabama statute is borrowed from the federal statute, and contains no language pointing to a different interpretation from that given the federal statute by the Supreme Court of the United States. If there is any dissimilarity from the first federal statute (1894), there is none from the second (1905), which had received a settled construction, as we have indicated, favorable to the contention of appellants at the time of its adoption by the Legislature of Alabama in 1927; this by way of an argument. There is no distinction between the first federal statute and the second, and no dissimilarity between the Alabama statute and the two federal statutes. The heart of the federal and the state legislation is found in the parallel columns above displayed.

■ The doctrine that a Legislature, in enacting a statute from another jurisdiction, enacts it with its authoritative interpretation, is universal and firmly established. It is unnecessary to cite authority to a rule of universal application, unless the case be brought within the purview of the well-defined exception where such interpretation is contrary to the settled public policy of the re-enacting sovereign. In a recent case, our court points out that the decisions in this state have so held, the court saying:

"The cases in this state are uniformly to the effect that 're-enacted statutes must receive the known, settled construction which they had received when previously of force; for it must be presumed the Legislature intended the adoption of that construction, or they would have varied the words, adapting them to a different intent. Sutherland Stat. Con. § 256. The rule has been of frequent application to the Code; in its construction, uniformly, the Legislature has been presumed to have known the settled construction of statutes, of which there was a substantial re-enactment, and to have intended the adoption of such construction. 1 Brick. Dig. 349, § 2.' Barnewall v. Murrell, 108 Ala. 366, 18 So. 831; Harrington v. State ex rel. Van Hayes, 200 Ala. 480, 76 So. 422." Galloway Coal Co. v. Stanford, 215 Ala. 79, 83, 109 So. 377, 380.

In Alabama F. & I. Co. v. Denson, 208 Ala. 339, 94 So. 311, it is said that previous construction of borrowed statutes from other jurisdictions is by no means conclusive, but persuasive only. In Galloway Coal Co. v. Stanford, supra, the words are "must receive"

and "must be presumed the Legislature intended." In Woolsey v. Cade, 54 Ala. 378, 388, 25 Am. Rep. 711, the words employed by Mr. Chief Justice Brickell are "the legislature is presumed to adopt such construction." Ex parte Sloss-Sheffield S. & I. Co., 207 Ala. 219, 92 So. 458, 460, contains "The presumption *must* be indulged that the framers of the act here involved were familiar with the construction that had been placed upon" it. And in Loveman, Joseph & Loeb v. McQueen, 203 Ala. 280, 82 So. 530, 533, the language used is: "We feel *bound* to give to our statute the well-settled construction already given to its terms * * * since we *must presume* that our lawmakers were familiar with that construction, and adopted the statute in that sense." To like effect is Steagall v. Sloss-Sheffield S. & I. Co., 205 Ala. 100, 102, 87 So. 787; O'Byrnes v. State, 51 Ala. 25, 27. In Cathcart v. Robinson, 5 Pet. 264, 280, 8 L. Ed. 120, Mr. Chief Justice Marshall thus states the rule:

"The rule, which has been uniformly observed by this court in construing statutes, is to adopt the construction made by the courts of the country by whose legislature the statute was enacted * * *. By adopting them they become our own as entirely as if they had been enacted by the legislature of the state. The received construction in England at the time they are admitted to operate in this country * * * may very properly be considered as accompanying the statutes themselves, and forming an integral part of them."

■ The Supreme Court of the United States repeatedly announced its construction of this statute in a line of cases commencing with the Hill Case, supra, in 1905, proceeding in that court through the Mankin Case, supra, in 1909, the Bartlett Case, 231 U. S. 237, 34 S. Ct. 88, 58 L. Ed. 200, in 1913, the John Davis Case, 244 U. S. 376, 37 S. Ct. 614, 61 L. Ed. 1206, in 1916, the Brogan Case, 246 U. S. 257, 38 S. Ct. 250, 62 L. Ed. 703, L. R. A. 1918D, 776, in 1918, the Fleischmann Case, 270 U. S. 349, 46 S. Ct. 284, 70 L. Ed. 624, in 1926. It rendered such a decision (as to original and subcontractors and sureties) a short while before the enactment of our highway statute, when, in Utah Const. Co. & Ætna Cas. & Sur. Co. v. United States for use and Benefit of H. Lindstrom, 273 U. S. 745, 47 S. Ct. 344, 71 L. Ed. 870, it denied certiorari. In the latter citation will be found a collation of the various decisions on this point. When the acts of 1927 were passed by the Legislature, the interpretation given by the Supreme Court in favor of the laborer and materialman was settled and well known. We adopted that construction of the federal statute as therein extended to subcontractors. This case does not fall within the exception to the rule as to borrowing a statute with its accepted and authoritative interpretation. It did not and

does not antagonize, nor is it contrary to a general principle or public policy of this state. The only construction of our court was not of an Alabama statute, but of a federal statute, and we will consider fully the case of American Surety Co. v. United States, for Use of Barrett, 127 Ala. 349, 28 So. 664, rendered by this court in 1899.

■ The question for answer then is whether when the Legislature adopted section 28 of the Act of August 23, 1927, p. 357, which contained the provision, "conditioned that *such contractor or contractors*, shall faithfully perform *such contract of the work agreed and contracted to be done*," were its terms in view of the meaning or construction by our court (in 1899, the Bartlett Case construing the Act of Congress approved August 13, 1894, 28 U. S. Stat. p. 278), or were they within the meaning and interpretation of the act of Congress (33 Stat. at L. 811, c. 778 (40 USCA § 270), amending Act of August 13, 1894, c. 280, 28 Stat. at L. 278, and the later and established construction thereof by the federal court. United States, for Use of Hill v. Amer. Surety Co., 200 U. S. 197, 26 S. Ct. 168, 50 L. Ed. 437; Mankin v. United States, Use of Ludowici-Celadon Co., 215 U. S. 533, 30 S. Ct. 174, 54 L. Ed. 315.

It is hardly necessary to observe that when the Supreme Court of the United States, through Mr. Justice Day in the Hill Case, supra, on January 2, 1906, declined the construction of our court in the Barrett Case, supra, of the instant federal statute, and held, as we have indicated, supra, that labor and material used in the prosecution of a public work, whether furnished under the contract directly to the contractor or to a subcontractor, are deemed within the obligation of the surety on the contractor's bond, the Barrett Case was in effect overruled. And in the Mankin Case, supra (decided January 17, 1910), the same justice writing, said of the additional phrase of the Act of February 24, 1905 (c. 778, 33 Stat. 811 [40 USCA § 270] amending the Act of August 13, 1894, c. 280, 28 Stat. 278), "the person or persons supplying the contractor with labor and materials," in describing those entitled to a copy of the contract and bond for the purpose of suit for the price of such labor and materials furnished and used in the prosecution of a public work, *though furnished to a subcontractor*, are within the obligation of a bond, conditioned conformably to said statute, "for the prompt payment by the contractor to all persons supplying him with labor or materials in the prosecution of the work," was a further departure from the construction by our court and an adherence to that announced in the Hill Case, supra.

In the Mankin Case, Mr. Justice Day concluded with the following observation (that we repeat):

"We cannot agree with this contention.

The phrase, 'person or persons supplying the contractor with labor and materials,' are the words embodied in both statutes alike in the requirement of a bond for their benefit. In the Hill Case it was distinctly held that 'persons supplying the contractor with labor and materials' included not only the subcontractor, but anyone who furnished labor and materials to the subcontractor for carrying out the work contracted for. There is nothing in the provision as to who shall have a copy of the bond for the purpose of suit which changes or limits the obligation of the bond under identical requirements in both statutes, alike embracing, as construed in the Hill Case, persons furnishing labor and materials to a subcontractor. * * *

"As was said in the Hill Case, the contractor can protect himself by requiring a bond securing him against liability on account of engagements of the subcontractor with persons who furnish labor and material upon his order. Indeed, the present contract contained, as the record shows, a provision that the general contractor reserved the right to require a full release from all claims for which he had become liable for materials furnished to, or work done for, the subcontractor, on account of materials and work required by the contract, with the right to withhold any amount due to the subcontractor until such release should be furnished."

In United States Fid. & Guaranty Co. v. U. S. for Benefit of Bartlett (1913) 231 U. S. 237, 34 S. Ct. 88, 58 L. Ed. 200; Brogan v. National Surety Co. (1918) 246 U. S. 257, 38 S. Ct. 250, 62 L. Ed. 703, L. R. A. 1918D, 776, and Fleischmann Const. Co. v. United States (1926) 270 U. S. 349, 46 S. Ct. 284, 70 L. Ed. 624, the statutes were liberally construed as highly remedial to provide security for the payment of labor and materials used in public work, and to give the creditor a remedy on the contractor's bond. Such were the federal constructions in the year 1926, when in August, 1927, we passed the road law and section 28 thereof. Acts of 1927, p. 356.

When the Hill Case, 200 U. S. 197, 26 S. Ct. 168, 50 L. Ed. 437, was decided by the Supreme Court of the United States, our construction of the Barrett Case, 127 Ala. 349, 28 So. 664, as to the extent and meaning of the federal statute on the same subject, ceased to be the rule of law. Industry of counsel furnishes us with authority on this point, where Mr. Chief Justice Rice observed (Walker v. Forbes, 31 Ala. 9, 12):

"The evidence of the Louisiana lawyers, having been adduced on the last trial, and having been found to be credible and true, must control the courts of this State, in construing the aforesaid sections of the Civil Code of Louisiana, although it leads to the adoption of a construction different from that placed upon them by the former decision in this case [25 Ala. 139, 60 Am. Dec. 498]. Our former construction was based upon the mere language of the sections, without any evidence as to the meaning or construction which had been placed upon them in Louisiana. Evidence of that kind being now before us, we yield our former construction, because we recognize the right of the courts of our sister States to settle authoritatively the meaning and effect of their own statutes, in relation to contracts like that here sued on, made within their limits. Peake v. Yeldell, 17 Ala. 636; Davidson v. Sharpe, 28 N. C. 14; Hanrick v. Andrews, 9 Port. 9, and the numerous authorities there cited. Our former construction would have been the law of this case, if it had been made upon the evidence now before us, but is not so, because, in this respect, the evidence is materially different from what it was when the case was previously here."

In effect, the argument of appellee and the holding of the trial court is that when the Legislature adopted the federal statute it also adopted a superseded construction of the federal statute by this court in the Barrett Case that no longer was in effect by reason of the decision in the Hill and Mankin Cases, supra, notwithstanding the Legislature was aware of the authoritative construction of the last-named cases, and that the same was to contrary effect. We differ from this view and the ruling of the trial court—that the rule as to the adoption and construction of the adopted or borrowed statute that obtains in this state is likewise to the contrary. The rule is that the borrowed statute is presumed to come with its authoritative interpretation. We have cited our case to such effect.

The insistence is made that, under the federal construction, the surety company or its original contractor cannot know who the materialmen or laborers may be that furnished the material and worked for the subcontractors. The all-sufficient answer is that sufficient bonds be required of subcontractors to indemnify as to such liability.

The condition of the bond under the federal statute is that the contractor " * * * shall promptly make payments to all persons supplying him or them with labor and materials in the prosecution of the work provided for in such contract." 40 U. S. Code, § 270 (40 USCA § 270). The condition of the bond under the Alabama statute is that the contractor " * * * shall faithfully perform such contract of the work agreed and contracted to be done, and shall promptly make payment to all persons supplying him or them with labor, material, feed-stuffs, or supplies, in the execution of the work provided for in such contract." Acts of 1927, § 28, p. 357.

An examination of the authorities from other states, under statutes substantially similar

to the Alabama statute, shows that a recovery may be had against the surety of the original contractor by persons supplying labor and materials to a subcontractor. Important among these cases are: City of Portland v. New England Casualty Co. (1915) 78 Or. 195, 152 P. 253, 254 (bond conditioned that "contractor or contractors shall promptly make payments to all persons supplying him or them labor or materials for any prosecution of the work provided for in such contracts"); Gilmore v. Westerman (1896) 13 Wash. 390, 43 P. 345, 346 (bond conditioned that contractor "shall pay all laborers, mechanics, and materialmen, and persons who shall supply such contractor with provisions or goods of any kind * * * in carrying on such work"); School Dist. No. 45 v. Hallock (1917) 86 Or. 687, 169 P. 130 (bond had same conditions as federal statute); Oliver Const. Co. v. Williams (1922) 152 Ark. 414, 238 S. W. 615, 616 (bond conditioned "that such contractor or contractors shall pay all indebtedness for labor and materials furnished in the construction of said public building"); Pavarini & Wyne, Inc., v. Title Guaranty & Surety Co. (1911) 36 App. D. C. 348, Ann. Cas. 1912C, 367 (bond contained condition required under federal statute); Associated Oil Co. v. Commary-Peterson Co., Inc. (1917) 32 Cal. App. 582, 163 P. 702 (condition of bond was that "contractor shall pay or satisfactorily secure 'the payment of all labor, materials and supplies furnished for constructing under the said contract the said portion of said highway'"); Southern Const. Co. v. Halliburton et al. (1924) 149 Tenn. 319, 258 S. W. 409, 411 (bond conditioned "upon the full and faithful performance of every part and stipulation of the contract, especially the payment for all materials purchased and for all labor employed in the contemplated work"); Fuller v. Brooks (1926) 117 Okl. 252, 246 P. 369 (bond conditioned to answer for labor and material used in the construction of the public improvement); State ex rel. Kingsley v. Cartersville Const. Co. (1926) 220 Mo. App. 244, 284 S. W. 150 (bond conditioned that contractor "shall pay all lawful claims for materials or labor performed in the construction of said highway"); Montgomery v. Southern Surety Co. (1928 Ind. App.) 162 N. E. 31, 33 (bond conditioned that contractor pay "all lawful claims of subcontractors, materialmen and laborers, for labor performed and material furnished in the carrying forward, performing, and completing of said contracts").

In the case of Pettus v. Dudley Bar Co. (1928) 218 Ala. 163, 118 So. 153, the facts were briefly as follows: Pettus had a contract with the State Highway Department for the construction of a bridge, and sublet a part of the work to Bosworth-Smith Company. In his contract with the state, Pettus agreed to pay for all material, etc., used in the construction of a bridge and gave bond guaranteeing said payment. The Dudley Bar Company, in a suit against Bosworth-Smith Company, made Pettus a garnishee. The question on appeal was whether the garnishee had a right to pay over to Bosworth-Smith Company certain funds due from him to it after the service of Pettus's garnishment and after his answer admitting a conditional liability to Bosworth-Smith Company. The payments from Pettus to Bosworth-Smith went to pay debts for materials purchased by Bosworth-Smith and used by it in the work it undertook as a subcontractor of Pettus. Thus the holding was that under the contract Pettus was liable to materialmen who had furnished supplies to Bosworth-Smith, Mr. Chief Justice Anderson saying:

"Our court has held in the recent cases of Union Indemnity Co. v. State, 217 Ala. 35, 114 So. 415, and Union Indemnity Co. v. State ex rel. Armstrong, 218 Ala. 132, 118 So. 148, that this requirement is not only binding and enforceable against the contractor, but his surety as well, and this would be true, notwithstanding the debt for labor, material, etc., was incurred by a subcontractor who may be personally or primarily liable therefor, and this would be so, irrespective of the nature of the contract with the subcontractor," etc.

In passing, it may be said that in the case of Jefferson County Board of Education v. Union Indemnity Co. (1928) 218 Ala. 632, 119 So. 837, the court indicates that bonds given in cases like the one at bar are entitled to a liberal construction, citing our cases of Union Indemnity Co. v. State for Use of McQueen-Smith, etc., Co., 217 Ala. 35, 114 So. 415, and Union Indemnity Co. v. State, for Use of R. S. Armstrong & Bro. Co., 218 Ala. 132, 118 So. 148.

The two acts of the Legislature in 1927 are found on pages 37 and 356, Acts of 1927. The last act was that of the whole subject of road building and the adoption of the federal act, and was a departure from, if in conflict with the Act of February 10, 1927, and was within the construction we have indicated of the federal act. And the fact that the words "or subcontractor" were eliminated in the Senate on passage of the first act evidences no specific intent to depart from the federal construction, but was in conformance with the Hill and Mankin Cases, supra, in passage of the general and last act.

It may be said further, and in the nature of a repetition, that the question in the case before us is within the expression of Mr. Justice Day in United States, for Use of Hill v. American Surety Co., 200 U. S. 197, 205, 26 S. Ct. 168, 171, 50 L. Ed. 441, as we have above quoted:

"If the contractor sees fit to let the work to a subcontractor, who employs labor and buys materials, which are used to carry out and fulfil the engagement of the original contract to construct a public building, he is

thereby supplied with the materials and labor for the fulfilment of his engagement as effectually as he would have been had he directly hired the labor or bought the materials."

And on this ground, the ruling of the trial court may not be sustained. The bond executed by the contractor in this case is sufficiently broad in its terms to cover the cost of materials and supplies furnished by appellants to a subcontractor of the original contractor; the same materials and supplies having been supplied and used in the execution of the work provided for in the contract that the principal in the bond had with the state of Alabama.

■ Gasoline, oil, and a lubricating outfit, and other materials indicated in the several interventions, supplied to a subcontractor in the performance of a contract for the repair and improvement of a public highway, are materials and supplies supplied in the execution of the work provided for in the contract under section 28, Act of 1927, p. 356, for which the principal and surety under the original contractor's bond given pursuant thereto are liable.

The last grounds of the demurrer, among others, of the appellee to the complaint of this appellant are as follows:

"The materials and supplies mentioned in said complaint are not such materials and supplies for the payment of which this defendant guaranteed that the contractor would pay for.

"The materials and supplies named in the complaint are not such as was used in the execution of the work provided for in such contract."

We have indicated that the above-quoted grounds of demurrer did not justify the ruling of the trial court. The itemized statement that was attached to and made a part of this appellant's complaint shows that the materials, etc., supplied were gasoline, oil, and a lubricating outfit, etc.

Adverting to the question discussed at the outset, we need not do more than observe that the bond covers other materials and supplies than materials bodily incorporated in the highway, viz., sand, cement, and gravel. To the insistence that gasoline, oil, and lubricating machine were not such materials and supplies as were incorporated in the work and within the statute and bond, this phase of the case was conclusively decided in the recent case of *Union Indemnity Co. v. Handley*, 220 Ala. 292, 124 So. 876.

The judgment of the circuit court is reversed, and the cause is remanded at the instance of the several appellants.

Reversed and remanded.

ANDERSON, C. J., and SAYRE and BROWN, JJ., concur.

On Rehearing.

THOMAS, J.

We are dealing with the question of pleading and not proof. If anything of value was not consumed in prosecution of the work, and left over in the hands of the contractor, the bond would not be liable therefor. We are dealing with the questions presented by the record.

The application for rehearing is overruled.