13623

MOLONY & CARTER CO. v. PENNELL & HARLEY, INC.

(169 S. E., 283)

November, 1929.

*Messrs. Osborne & Butler* and *Huger, Wilbur, Miller & Mouzon,* for appellant,

*Messrs. Nicholls, Wyche & Russell,* for respondent.

April 13, 1933.

The opinion of the Court was delivered by MR. CIRCUIT JUDGE G. B. GREENE, ACTING ASSOCIATE JUSTICE.

On June 9, 1928, Pennell & Harley, Inc., the respondent herein, entered into a contract with the South Carolina State Highway Department to construct a part of Highway No. 20 lying in Anderson County. The contract provided that respondent should "furnish all necessary machinery, equipment, tools, labor and other means of construction and furnish all materials specified in the manner and at the time prescribed," etc. This contract also set forth: "That in consideration of the payment of the sums named in said proposal, the contractor agrees at his own proper cost, and expense, to do all the work of said improvement, according to the requirements of the specifications, special provisions, notice to contractors, proposal and plans which are made

part hereof and subject to all the terms and conditions of said specifications to furnish all labor, tools, machinery and materials necessary therefor, except as provided in said specifications."

In said contract respondent further agreed: "In order to insure the faithful performance of each and every condition, stipulation and requirement made by this contract and to indemnify and save harmless the party of the first part from any and all damages, either directly or indirectly arising out of any failure to perform the same, the party of the second part is to execute and deliver herewith a bond in the penalty of $88,387.95 conditioned for the faithful performance of such conditions, stipulations and requirements, with surety or sureties satisfactory to the party of the first part."

In accordance with the provisions of its contract, respondent on July 17, 1928, executed its bond to the State Highway Department. The condition of said bond was as follows: "The condition of this obligation is such that if the said bounden principal, Pennell & Harley, Inc., shall in all things well and truly perform all the terms and conditions of the foregoing contract, to be by them performed and within the time therein provided, and shall pay when and as due all lawful claims for labor performed or materials and supplies furnished for use in and about the construction of said highway or highway structures * * * then this obligation is to be void; otherwise to be and remain in full force and virtue."

In lieu of a surety on said bond, respondent deposited with the State Highway Department cash or securities in the required amount.

After the execution of the contract and bond, respondent entered into a contract with Pruitt & Jamison, as subcontractors, to do a part of the work called for by its contract with the State Highway Department.

In reply to a letter from appellant, respondent on July 11, 1928, wrote appellant as follows:

"Moloney & Carter, Charleston, S. C.

"Gentlemen: We note that you expect to send us copies of all invoices and monthly statements for supplies sold by you to Jamison & Pruitt.

"From what we know of Jamison & Pruitt they are very reliable, however, we want to notify you that we assume no obligations whatsoever for Jamison & Pruitt.

"Very truly yours,

"PENNELL & HARLEY, INC.

"By J. ROY PENNELL, Pres. & Treas."

On July 24, 1928, appellant replied to respondent's letter as follows:

"Pennell & Harley, Inc., 526-527 Montgomery Building, Spartanburg, S. C.

"Dear Sir:—Attention J. Roy Pennell, Pres. & Treas. With reference to your letter of July 11th, in regard to shipments made Jamison & Pruitt.

"We have been advised that the contract in which Messrs. Jamison & Pruitt are working as sub-contractors, is held by the State Highway Department, in your name, with bond from you covering. The highway department advises that the bond covering has a requirement that all purchases for feeds made under this bond shall be paid, before the retirement of the bonds. We accordingly notified you that we were contemplating trying to serve Messrs. Jamison & Pruitt, not with the purpose of calling upon you to assume their obligations, for this is done *ipso facto* by your bond, but to place the matter in a business method with you, for we have investigated and your statement regarding the reliability of Jamison and Pruitt has been confirmed by our investigations, but on all projects handled thru the Highway Department our policy is to handle with the original contractor to advise them of any and all relations affecting them.

"Yours very truly,

"MOLONY & CARTER COMPANY,

"*Asst. Treasurer.*"

Subsequently appellant sold and delivered to Pruitt & Jamison, subcontractors, horse and mule feed amounting to $1,230.20 for use in and about the construction of said highway, and all of said feed was actually consumed by animals used in and about the construction thereof.

After appellant had completed its sales of stock feed to Pruitt & Jamison, the purchasers signed a written statement as follows:                              "November 26, 1928.

"The amount $1,230.20 due by us to Moloney and Carter Company of Charleston, S. C., represents horse and mule feed used on Highway Project 88 in Anderson.

"[Signed]   PRUITT & JAMESON,
"By W. M. JAMESON."

After Pruitt & Jamison had failed and refused to pay appellant the amount due it, appellant made demand upon respondent for the payment thereof, and respondent refused to pay the same. Appellant then brought this action to recover of respondent the sum of $1,230.20, with interest from December 6, 1928. Respondent by its answer denied generally any liability in the matter, and also made special denial of liability on account of having given appellant notice that it would "assume no obligations whatsoever for Pruitt & Jamison."

The case was heard by Hon. Wm. H. Grimball, presiding Judge at the spring 1932 term of Court for Spartanburg County, without a jury and upon an agreed statement of facts. The facts agreed upon have been fully stated above, except that it appears that respondent had arranged with Pinnacle Flour Mills to furnish horse and mule feed to Pruitt & Jamison. But it also appears that appellant had no notice or knowledge of such an arrangement.

Judge Grimball reached the conclusion generally that appellant was not entitled to recover, and ordered that judgment be entered in favor of respondent.

The appeal to this Court presents for our determination these questions:

(1) Did the contract bond given by the defendant to the State Highway Department protect one who furnished feed for horses and mules employed in carrying out the contract?

(2) Did the protection of the contract bond extend to one who furnished supplies to a subcontractor?

(3) If the defendant's contract bond obligated it to pay for supplies furnished a subcontractor, could it escape liability to the materialman furnishing such supplies by giving notice to the materialman that it would not be responsible for the subcontractor's purchases?

(4) Did the defendant's contract bond obligate it to pay interest on a materialman's claim, and from what date?

We shall now consider these questions in the order named.

The defendant's contract with the Highway Department bound it to furnish at its own cost and expense "all necessary machinery, equipment, tools, labor and other means of construction and furnish all materials specified," and "to execute and deliver a bond to insure the faithful performance of this and the other, terms of the contract." The bond executed did not merely secure the performance of the terms of the contract generally, but specifically bound the contractor to "pay when and as due all lawful claims for labor performed or materials and supplies furnished for use in and about the construction of said highway."

This Court has held in a number of cases that such a bond is intended for the protection of persons furnishing materials, as well as for the protection of the obligee, and that a materialman may bring a direct action against the surety on such bond. *Mack Man. Co. v. Insurance Co.*, 103 S. C., 55, 87 S. E., 439; *Standard Oil Co. v. Powell*, 139 S. C., 411, 138 S. E., 184, 186; *American Hardware Co. v. Surety Co.*, 159 S. C., 263, 156 S. E., 770.

There was, however, no surety company on the bond in the present case as there was in the three cases above cited. In this case the principal, the contractor, deposited cash or securities in lieu of the obligation of a

surety company; or, in effect, the contractor acted as its own surety. No reason has been advanced, and none can be advanced, we apprehend, why a contractor who acts as his own surety, as in this case, should not be charged with the same responsibility and the same degree of liability to materialmen as this Court has found chargeable to a surety on such a bond.

Does horse and mule feed which is fed to animals while used in the construction of a highway come within the meaning of "materials and supplies furnished for use in and about the construction of said highway?"

In the case of *Franzen v. Southern Surety Co.,* 35 Wyo., 15, 246 P., 30, 31, 46 A. L. R., 496, where the bond required the principal to "pay for all labor and material in connection with said work," the Court held that feed for horses employed in the work was covered by the bond, saying: "This feed is akin, at least, to fuel and lubricants furnished for machinery." The opinion in that case makes an exhaustive review of the decided cases on the point, and says: "By far the greater number of cases actually passing on the point have held that such items may be recovered." In the case of *Earley & Daniel Company v. American Surety Company* (Circuit Court of Appeals, 4th Circuit), 5 F. (2d), page 670, Judge Woods, writing the opinion of the Court, held that stock feed consumed by live stock employed in the construction of a road was "materials" within the coverage of a bond conditioned on contractors' payment to all persons furnishing materials in or about the construction of roads.

While the specific matter of horse and mule feed does not seem to have been considered by this Court in connection with bond contracts like the one under consideration, there are two cases which have been decided by this Court and which would logically lead to the holding by this Court that

such an item would be entitled to protection under the bond contract in this case.

In the case of *Standard Oil Company v. Powell, supra,* one of the questions for determination, as stated by the master, was "do the terms 'labor' and 'materials,' as used in the contract, bond, specifications, and application, cover only labor on and materials actually entering into the construction of the road paving, or do they apply to labor and materials used, that were incidental and ancillary, but essential to the prosecution of the work, such as coal, gasoline, repairs to machinery, etc. ?" The master found that "materials used in the work, though not part of the permanent paving, are as necessary as the actual cement, asphalt, etc., that constitute the road; and so with labor employed in making repairs to machinery," etc. The report of the master on this point was confirmed by the Circuit Court and the Supreme Court.

In the case of *American Hardware & Equipment Company v. Detroit Fidelity & Surety Co.,* 159 S. C., 263, 156 S. E., 770, this Court held that the broad provisions of a road contractor's bond, exactly similar to that in the present case, that the contractor would pay all claims for "supplies furnished for use in and about the construction of said highway," bound the surety to pay for a gas engine pump purchased by the contractor for use in the work. We are of opinion, therefore, that horse and mule feed falls within the terms of the bond given by respondent to the State Highway Department.

Did the protection of the contract bond in this case extend to one who furnished supplies to a subcontractor? This question does not appear to have been decided by this Court, and in most of the jurisdictions where the question has arisen there were statutes requiring the execution of such bonds for the protection of materialmen who furnished supplies for use in the performance of such contracts.

The leading case in point is *U. S. for Use of Hill v. American Surety Co.*, 200 U. S., 197, 26 S. Ct., 168, 169, 50 L. Ed., 437. In that case a contractor pursuant to a federal statute requiring bonds of persons entering into construction contracts with the United States gave a surety bond conditioned that the contractor should "promptly make payments to all persons supplying him or them labor and materials in the prosecution of the work." The principal contractor let a portion of the contract to a subcontractor, and the subcontractor employed Hill to do certain labor and furnish certain materials. The subcontractor having failed to pay Hill, he sued the surety on the contractor's bond, and the United States Supreme Court allowed him to recover, saying: "If the contractor sees fit to let the work to a subcontractor, who employs labor and buys materials which are used to carry out and fulfil the engagement of the original contract to construct a public building, he is thereby supplied with the materials and labor for the fulfilment of his engagement as effectually as he would have been had he directly hired the labor or bought the materials."

In *Mankin v. United States,* 215 U. S., 533, 30 S. Ct., 174, 54 L. Ed., 315, where the contractor's bond was similar to that in the *Hill case,* the Supreme Court reaffirmed the doctrine laid down in that case, and held the surety liable to persons who had supplied labor and materials to a subcontractor.

A similar conclusion was reached in the case of *State v. Southern Surety Co.*, an.Alabama case, reported in 221 Ala., 113, 127 So., 805, 70 A. L. R., 296, in which the Court discussed numerous cases from many states. These and many other cases are collated in an annotation following the Alabama case in 70 A. L. R., 308, in the course of which the annotator says: "The overwhelming weight of judicial opinion seems to be inclined to the view that the contractor and the surety on his bond given in pursuance of statute, to secure payment of labor and material furnished in the con-

struction of a public building or improvement, are liable not only for labor and materials directly furnished to the contractor, but also for those furnished to his subcontractor, assuming that, in other respects, they are within the coverage of the bond."

As stated above, the cases above cited and those listed in the annotation above referred to mostly arose in jurisdictions where there were statutes requiring bonds from contractors engaged in public works, and the Court in many of these cases resorted to these statutes and their remedial purpose in order to broaden the effect of bonds, the language of which apparently confined their protection to those dealing directly with the principal contractor. In the present case, the bond was not given pursuant to any statute, but because it was required by the State Highway Department. The purpose of the State Highway Department in requiring the execution of such a bond is identical with the purpose underlying the enactment of the statutes in other States requiring such bonds, and no sound reason appears why the contract bond in the present case should not be given just as liberal a construction as that given to bonds executed pursuant to statute.

In the case of *Overman & Co. et al. v. Great American Indemnity Co.*, 199 N. C., 736, 155 S. E., 730, 731, a road contractor gave a bond pursuant to no statute, but as in the present case in compliance with the requirements of the State Highway Commision. The contract provided that the contractor should furnish all necessary materials, and the bond was conditioned for the faithful performance of the contract, and "that the contractor 'shall well and truly pay all and every person furnishing material or performing labor in and about the construcion of said roadway all and every sum or sums of money due him, them, or any of them, for all such labor and materials for which the contractor is liable.' " The Court held: "Bonds of this nature are construed liberally for the protection of laborers and materialmen and

with a view to accomplishing the purposes for which they are given, to the end that public works may be paid for and not erected with the use of labor and materials belonging to others."

But in the present case we do not think it is necessary to resort to a "liberal" construction of the language of the bond in order to protect the right of the appellant to be paid for materials which it furnished to respondent's subcontractor. We need only give to the language of the bond its natural and necessary meaning. The bond provided that the contractor would perform all the terms of the contract which required that the contractor supply at his own expense all necessary materials and "means of construction," and also that the contractor would pay all claims for "materials and supplies furnished for use in and about the construction of the highway." To say that this bond does not protect a materialman who sold to a subcontractor materials and supplies that were used in the construction of the highway would be to deny to the language of the bond its usual and natural meaning and effect. The terms of the contract bond in this case bound the original contractor to pay for all materials and supplies actually used in and about the construction of the highway whether the said materials and supplies were furnished directly to the original contractor or to his subcontractor.

It is argued for respondent that it would be unreasonable and oppressive to hold it liable under its bond for debts contracted by its subcontractors. This argument is fully answered in the case of *Hill v. American Surety Company,* *supra,* in which the Court said: "It is easy for the contractor to see to it that he and his surety are secured against loss by requiring those with whom he deals to give security by bond, or otherwise, for the payment of such persons as furnish work or labor to go into the structure."

On the other hand, it is readily apparent that, if the original contractor could escape liability under its bond by

subletting the greater part or all of the work which it contracted to do, no protection whatsoever would be given laborers and materialmen whose labor and materials actually constructed the highway.

Respondent attempts to escape liability in this case upon the ground that it notified appellant that it would not pay for materials and supplies furnished to its subcontractors. In other words, respondent contends that, having solemnly bound itself to pay for all supplies furnished for use in the performance of its contract, it could escape paying one furnishing such supplies by reason of having notified him before the bond was executed that it intended to violate the promise made in the bond. As stated by counsel for appellant in his argument, the mere statement of such a proposition is its sufficient refutation.

In *Bartlett & Kling v. Dings,* 249 F., 322, 324 (C. C. A., 8th Circ.), the Court said: " 'The bond which is provided for by the act was intended to perform a double function— in the first place, to secure to the government, as before, the faithful performance of all obligations which a contractor might assume towards it; and, in the second place, to protect third persons from whom the contractor obtained materials or labor.' * * * The posting of notices by Bartlett & Kling that it would not be responsible to the employees for its subcontractors does not release it from liability. If that were permitted, the law would be a snare and a delusion, because every contractor would avail himself of it, and deprive the materialmen and laborers of the benefits of the act."

What was said in the case just cited applies with equal force to the present case.

It is argued for respondent that appellant is estopped from enforcing its claim against respondent because appellant made some investigation of the reliability of the subcontractors. There is nothing in the pleadings to show that there was any such issue before the Circuit Court;

but, if there had been, there is no merit in that contention, because the evidence clearly shows that appellant never at any time relinquished its right to the protection afforded it by respondent's bond contract. Neither is respondent's liability affected by the fact that it made some arrangement with Pinnacle Flour Mills to furnish these supplies to its subcontractors. The agreed statement of facts shows that appellant had no notice or knowledge of such an arrangement. There is nothing to show that respondent had the right to dictate to its subcontractors as to where they should buy supplies. Neither does it appear that Pinnacle Flour Mills ever recognized the existence of such an arrangement or attempted to furnish such supplies. On the contrary, it does appear that appellant furnished to the subcontractors all of the supplies mentioned in its complaint and such supplies were actually used in and about the construction of the highway.

The respondent's contract bond obligated it to pay the claims of materialmen "when and as due." After appellant had completed its sales of supplies to Pruitt & Jamison, the subcontractors, the purchasers on November 26, 1928, signed a written statement agreeing that the sum of $1,230.20 was then due by them to appellant. Appellant's account with the subcontractors on that date became an account stated and began bearing interest at the legal rate from that date.

"Where a creditor sends to his debtor a statement of the account between them and the debtor assents to the balance stated, then the account between them ceases to be an open account and becomes an account stated. The creditor can then bring his action upon the account stated as a liquidated demand, and he is entitled to interest from the date of the assent." *Gwathmey et al. v. Burgiss*, 104 S. C., 280, 88 S. E., 816, 817.

In the very recent case of *Columbia Lumber & Manufacturing Company v. Globe Indemnity Co.*, 166 S. C., 408,

164 S. E., 916, the Court held that a surety on a contractor's bond was liable to pay interest on material claims from their respective due dates.

It appears, however, that appellant asked in its complaint for interest only from December 6, 1928, and it will therefore be allowed interest only from that date.

The judgment of the Circuit Court is reversed and the case remanded to that Court in order that judgment may be entered in favor of appellant against respondent in the sum of $1,230.20, with interest at the rate of 7 per cent. per annum from December 6, 1928, and for such other proceedings as are consistent with the holdings herein announced.

MR. CHIEF JUSTICE BLEASE and MESSRS. JUSTICES STABLER and BONHAM concur.