# HEINE SAFETY BOILER COMPANY *v.* UNITED STATES, TO THE USE OF THE AMERICAN ENAMELED BRICK & TILE COMPANY.

---

PRINCIPAL AND SURETY; BONDS; CONTRACTS; SUBCONTRACTORS; MATERIALMEN.

1. The rule that extension of time of payment to the principal in a bond will, if made without the consent of his surety, and upon a sufficient consideration, discharge the surety, does not apply to the case of a bond given under the act of Congress of August 13, 1894 (28 Stat. at L. 278, chap. 280, U. S. Comp. Stat. 1901, p. 2523), by a government contractor, conditioned upon his promptly paying persons sup-

plying him with labor or materials in the prosecution of the work, contemplated by his contract with the government.

2. When a government contractor who had given a bond as required by the act of Congress of August 13, 1894 (28 Stat. at L. 278, chap. 280, U. S. Comp. Stat. 1901, p. 2523), conditioned upon the prompt payment of all persons supplying him with labor and materials in the prosecution of the work contemplated by his contract, paid a subcontractor all the contract price for brick he was supplying for the work, except one instalment, although he knew he was getting the brick from a materialman, he and the surety on his bond are liable on the bond to the materialman for the purchase price of the brick so furnished the subcontractor, although the materialman gave no notice to them of the subcontractor's default, until after the contractor had settled with him, and he had been adjudged a bankrupt.

No. 2108.    Submitted April 14, 1910.    Decided May 10, 1910.

HEARING on an appeal by the defendants from a judgment of the Supreme Court of the District of Columbia, for want of a sufficient affidavit of defense in an action on a bond.

*Affirmed.*

The COURT in the opinion stated the facts as follows:

This is an action at law brought by the appellee, The American Enameled Brick & Tile Company, a corporation, plaintiff below, against the two appellants, the Heine Safety Boiler Company, a corporation, and the Empire State Surety Company, a corporation, as principal and surety on a bond. For convenience, the appellee will be referred to as plaintiff and the appellants as defendants. The bond was given to secure the faithful performance of the covenants and conditions of a certain contract entered into by the defendant boiler company with the United States, whereby the boiler company obligated itself to furnish all the labor and materials and perform all the work required in installing two high-pressure boilers in the United States Treasury building, in this city. It was also stipulated in the bond that the defendant boiler company "should promptly make payment to all persons supplying said defendant with la-

bor or materials in the prosecution of the work contemplated by said contract."

It appears that the defendant boiler company entered into a contract with one Dorsey to supply certain of the labor and materials used in and about the instalment of the boilers. Dorsey purchased from the plaintiff company brick for said work to the value of $857.80. The brick was purchased by Dorsey to the value of $631.20 on October 11, 1907; to the value of $97.10 on November 19, 1907; and to the value of $129.50 on December 7, 1907. By the terms of the sale to Dorsey, the above amounts became due and payable thirty days after date, making the last payment due January 6, 1908.

It is alleged in its plea that, after Dorsey completed his work, the defendant boiler company, on December 31, 1907, paid him the sum of $983.25, being the full amount due him, less $167.55, which it withheld. Quoting from the brief of counsel for defendants: "It is further averred that neither of the appellants nor the United States have notice or knowledge or any reason to believe that the said Dorsey had not paid the use-plaintiff below in full for the brick so furnished, although at the time the appellant the Heine Safety Boiler Company made payment to said Dorsey, all the brick for which compensation is claimed had been furnished and payment to the use-plaintiff below was long overdue, save and except the last shipment, for which sufficient sum was held by the appellant the Heine Safety Boiler Company. It is further charged that the first notice received from any source of the fact that payment for the brick so furnished to the said Dorsey had not been made was on February 25, 1908, long after payment had in good faith been made to him."

It also appears that, between the date the boiler company settled with Dorsey and the date it alleges that it received notice of his failure to pay plaintiff for the brick, Dorsey was adjudged a bankrupt, and therefore became unable to respond to any claim plaintiff might make against him. In the court below, after separate pleas of the defendants had been filed, counsel for plaintiff moved the court for judgment on the rec-

ord.   This motion was granted, and judgment was entered against the defendants for the full amount claimed in the declaration.   From that judgment this appeal is prosecuted.

Mr. *Edwin C. Brandenburg,* Mr. *Clarence A. Brandenburg,* Mr. *F. W. Brandenburg,* and Mr. *Clarence W. DeKnight* for the appellants.

Mr. *Jackson H. Ralston,* Mr. *F. W. Siddons,* and Mr. *William E. Richardson* for the appellee.

Mr. Justice Van Orsdel delivered the opinion of the Court:

The bond in question was given under the provisions of the act of Congress, 28 Stat. at L. 278, chap. 280, U. S. Comp. Stat. 1901, p. 2523, being an act "for the protection of persons furnishing materials and labor for the construction of public works."   It requires. that persons contracting with the United States for the construction of any public works shall, before commencing work, execute the usual penal bond, "with the additional obligations that such contractor or contractors shall promptly make payments to all persons supplying him or them labor and materials in the prosecution of the work provided for in such contract."   The act also gives the materialman the right to bring suit in the name of the United States, for his use and benefit, against the contractor and his sureties.

A single question is presented by this appeal.   Did plaintiff lose its right of action against the defendant bonding company by reason of its failure to proceed against Dorsey when the respective amounts became due, or to promptly notify the boiler company of his default?   It is earnestly contended by counsel for defendants that the failure of plaintiff to notify the boiler company of Dorsey's default, until it had settled with Dorsey, and he had been declared a bankrupt, relieved the bonding company of liability.   It is insisted that plaintiff's inaction was equivalent to an extension of credit to Dorsey, and relieved the bonding company of liability for the original indebtedness.

We are not impressed with this contention. Unquestionably, under the law of suretyship, any change in the contract for the performance of which a surety is liable, when made without his consent, as, for example, an extension of the time of payment, if upon sufficient consideration, discharges the surety. But we are here dealing with a different sort of an obligation. The covenant is not confined to the performance of a contract by the principal, but the surety undertakes to protect all parties dealing with the principal under the contract. In fact, the covenant is made specially for the benefit of those subcontractors and materialmen, unknown to the guarantor, who may furnish material and labor for the principal.

It is clear from the record that the boiler company knew where Dorsey was getting the brick, and that he was not paying for it on delivery, since, in the final settlement, a sufficient amount was withheld by the boiler company to pay for the last instalment of the brick. The duty rested upon defendants to advise themselves of Dorsey's transactions in connection with carrying out his contract with the boiler company before making final settlement with him. We think there was no such lack of diligence on the part of the plaintiff, if, indeed, it is at all material, as would estop it from asserting its claim against the bonding company. This case is fully disposed of by the case of *United States Fidelity & G. Co.* v. *Golden Pressed & Fire Brick Co.* (*United States Fidelity & G. Co.* v. *United States*) 191 U. S. 416, 48 L. ed. 242, 24 Sup. Ct. Rep. 142. In that case the bond sued upon was similar to the one in the present case. It contained the same condition that the principal on the bond should "promptly make payment to all persons supplying him labor or material in the prosecution of the work contemplated by [his] said contract." There the bonding company denied liability on the ground that the plaintiff, who, as in this case, furnished brick, had, without the knowledge of the bonding company, extended the time of payment. It had accepted from the principal promissory notes running from thirty to sixty days. The bonding company attempted to invoke the rule that extensions made without the consent of the

surety release it. from liability, but the court held that the rule did not apply in the case of bonds such as the one in question. On this point, Mr. Justice Brown, speaking for the court, said: "The question involved is whether the ordinary rule that exonerates the guarantor in case the time fixed for the performance of the contract by the principal be extended applies to a bond of this kind, executed by a guaranty company, not only for a faithful performance of the original contract, but for the payment of the debts of the principal obligor to third parties. It is conceded that, by the general law of suretyship, any change whatever in the contract for the performance of which the guarantor is liable, made without his consent, such, for instance, as an extension of time for payment, if made upon sufficient consideration, discharges the guarantor from liability."

In the same opinion, the learned jurist, speaking of the broad scope of a covenant such as the one in the bond here in question, said: "In this covenant the surety guarantees nothing to the principal obligee,—the government,—though the latter permits an action upon the bond for the benefit of the subcontractors. The covenant is made solely for their benefit. The guarantor is ignorant of the parties with whom his principal may contract, the amount, the nature, and the value of the materials required, as well as the time when payment for them will become due. These particulars it would probably be impossible even for the principal to furnish, and it is to be assumed that the surety contracts with knowledge of this fact. Not knowing when or by whom these materials will be supplied, or when the bills for them will mature, it can make no difference to him whether they were originally purchased on a credit of sixty days, or whether, after the materials are furnished, the time for payment is extended sixty days, and a note given for the amount maturing at that time. If a person deliberately contracts for an uncertain liability, he ought not to complain when that uncertainty becomes certain."

True, the court in that case refused to express an opinion "as to whether, if an unusual credit were given, and, in the mean-

time, the principal obligor had become insolvent, or the surety were otherwise damnified by the delay, it might not be exonerated." The credit of thirty days given by plaintiff was not an unusual one. Thirty days' acceptance is usually regarded the same as cash in commercial transactions. As suggested, the defendant boiler company had full notice of the credit given Dorsey, and, unlike the case just cited, no express extensions were granted by plaintiff. Neither did plaintiff wait an unusual length of time before notifying defendants of its claim. We find no error in the record. The judgment is affirmed with costs, and it is so ordered.                    *Affirmed.*