## ALEXANDER THOMSON, INC.
*vs.*
## B. PERINI & SONS, INC. ET AL.

Superior Court          Hartford County          File No. 61004

MEMORANDUM FILED JUNE 12, 1941.

*Joseph P. Cooney,* of Hartford, for the Plaintiff.

*Willam D. Shew,* of Hartford, for the Defendant, B. Perini & Sons, Inc.

CORNELL, J. For the most part, the material facts are not in dispute. It is disclosed that on June 1, 1937, a written agreement was executed by the defendant, B. Perini & Sons, Inc. (hereinafter called the principal contractor), with the Metropolitan District (which is a municipal corporation having its territorial limits in the County of Hartford, in this State, hereinafter referred to as the "District"), by the provisions of which the former undertook to "do all the work and furnish all the materials, tools and appliances.... necessary or proper for performing the work...." of completing the Bills Brook Dam and appurtenant structures of the Barkhamsted Reservoir on the east branch of Farmington River in the Town of Barkhamsted, Connecticut, according to certain drawings and specifications. Pursuant to the contract requirements

the principal contractor executed and delivered to the Metro-politan District, and the Town of Barkhamsted, as obligees, a bond in the sum of $1,582,793.25, on which the other named defendants (viz., The Aetna Casualty and Surety Company, The Hartford Accident & Indemnity Company and the Maryland Casualty Company) are sureties, the condition in which reads as follows: "That if the said Principal shall well and truly keep and perform all the agreements, terms and conditions of said contract on its part to be kept and per-formed *and shall also pay for all labor performed or furnished and for all materials used, in the carrying out of said contract* and shall indemnify and hold harmless said District and said Town from any and all claims and demands which may be made upon said District or said Town as a result of anything done or omitted by said Principal in connection with the carry-ing out of said contract, then this obligation shall be void; otherwise it shall remain in full force and effect."

In the course of its performance of the contract, the prin-cipal contractor entered into an agreement with Quarries Operating Corporation, located in the State of Massachusetts with an office in the City of Quincy in that state (herein-after referred to as the "subcontractor"), whereby the latter engaged to furnish and install certain stonework required in the project. On August 6, 1937, the subcontractor contracted with the plaintiff to process a portion of such stone, which, in due course, was used by the subcontractor in fulfilling its un-dertaking with the principal contractor and by the latter, in turn, in performing its engagements with the District. Per-formance of its obligations to the subcontractor by the plaintiff required both the application of hand labor to and the ma-chining of stone furnished by the subcontractor who, as the work was completed, collected the finished material at the plaintiff's place of business and delivered it to the site of the project where it was installed by the subcontractor. The value of the work thus done by the plaintiff upon the order of the subcontractor computed on the basis of the contract between them was $16,986.03. Of this, material of a value of $8,136.78 was furnished during 1937. The amount re-maining, $8,849.25, was supplied in the first half of 1938, as against which the plaintiff was paid $4,000 up to and in-cluding August 3, 1938, which, plus a credit of $120 allowed the subcontractor, leaves an unpaid balance of $4,729.25 owing plaintiff. The subcontractor has been paid in full

by the principal contractor. To collect such sum plaintiff has brought this action against the principal contractor and the sureties on the bond mentioned *supra,* claiming that all are liable to it by reason of their undertaking to pay for all labor performed or furnished and materials used in carrying out the principal contractor's contract with the District.

The first of two special defenses filed is to the effect that the bond in question was furnished by the principal contractor "pursuant to Section 1594c of the [1935] Cumulative Supplement and the plaintiff failed to file a statement of its claim within sixty days after it ceased to furnish materials and labor as is required by said statute." The statute mentioned as it exists and was at the time the principal contract was made is set out in full in the footnote.

As appears from its provisions, the right of one performing or furnishing labor or materials for public works to which the statute applies to the benefit of its terms is subject to the performance by the claimant of a condition precedent, viz., that he file with the contracting officers or agents of the State or its subdivisions, as the case may be, "a statement of such claim within sixty days after he shall have ceased to furnish such materials and labor." *New Britain Lumber Co. vs. American Surety Co.,* 113 Conn. 1, 8. Plaintiff admits that it failed to comply with this provision in that the stated period had expired when it filed its claim. From which it follows, of course, that if the bond in question was one given under

"Sec. 1594c. Bonds for protection of employees and material men on public structures. Any officer or agent, contracting in behalf of the state or any subdivision thereof for the construction, alteration, removal or repair of any public building, public road, public sewer or public bridge, if such contract shall exceed the sum of five hundred dollars, shall require from each contractor, as a condition precedent to the execution of a contract for any such construction, alteration, removal or repair, a bond with sufficient surety and satisfactory to such officer or agent so contracting; which bond shall be conditioned for the faithful execution of the contract according to its provisions and for the payment for all materials and labor used or employed in the execution of such contract. Any person, firm or corporation having any claim for materials and labor used or employed in the execution of such contract shall file, with the officers or agents contracting for any such construction, alteration, removal or repair, a statement of such claim within sixty days after he shall have ceased to furnish such materials or labor, which claim, if correct, shall be paid by such officers or agents, who shall recover the amount thereof with costs from the surety on such bond. The liability of the state or any subdivision thereof shall not exceed in the whole the amount it agreed to pay such contractor. If the total amount of such claims shall exceed such contarct price, all such claims shall be paid pro rata."

or in pursuance of the particular statute, plaintiff is barred from a recovery in this action. *New Britain Lumber Co. vs. American Surety Co., supra,* pp. 7, 8. Should it be determined, however, that the bond was not required by or given pursuant to the designated statute, another question will be presented, i.e., whether the writing imposes an obligation on the principal contractor or sureties, or both, to pay plaintiff's claim and, if so, the amount which it is entitled to receive.

To determine whether the bond here under examination was one required by section 1594c, *supra,* regard must be had: (1) to its provisions considered in the light of the situation of the parties to the principal contract at the time this was entered into with specific reference to whether the conditions stated in it conform to those specified in the statute, and (2) to the question whether the particular project described in the contract was one comprehended by such statute. Though the first mentioned of these considerations is not alone decisive of the question, since obviously an affirmative conclusion respecting it is not incompatible with a negative determination as concerns the second, it is, nevertheless, essential to the solution of the question. The project involved was admittedly of public character. The work was authorized by a "subdivision" of the State within the meaning of that term as employed in the pertinent statute. The bond was given by the obligors in connection with the contract for the construction in question. In all these respects, such a situation as the statute conceives is presented. It is true that the bond differs from the statute in question in two respects, but such variances (if they may be so designated) are immaterial. Thus: (a) in that it does not employ the language of the Act, and (b) in that it includes a condition not mentioned in the statute and in addition to those therein specified. As respects the first of these ("a") it is evident that the statute contents itself with a description of the character and scope of the obligation which it prescribes but does not specifically dictate the form or verbiage in which it shall be expressed. Under such circumstances there was no requirement, in order to satisfy the purpose of the statute, to incorporate the identical language of that Act. It is enough, if despite a departure from the phrases employed, the legal obligation described in the condition of the bond, in whatever verbiage it is cradled, be one identical with that stated in

such statute. *Holbrook vs. Bentley,* 32 Conn. 502, 506; 9 C.J. *Bonds* §39 and cases cited in note 64; 11 C.J.S. *Bonds* §25, subd. b; 4 R.C.L. *Bonds* §14; *United States vs. Hodson,* 10 Wall. 395; *American Surety Co. vs. Tarbutton,* (Tex. Civ. App.) 248 S.W. 435, 437; *Franzen vs. Southern Surety Co.,* 35 Wyo. 15, 246 Pac. 30, 31, 46 A.L.R. 496. That this requisite has been satisfied seems apparent. The statute prescribes that the bond contain two conditions. The first of these is "for the faithful execution of the contract according to its provisions." A like obligation is expressed in the bond in the language that the principal contractor "shall well and truly keep and perform all the agreements, terms, and conditions of said contract on its part to be kept and performed." The second required by the statute is that the bond be conditioned "for the payment for all materials and labor used or employed in the execution of such contract." A substantially parallel provision in the bond is to the effect that the principal contractor "shall also pay for all labor performed or furnished and for all materials used in the carrying out of said contract." It is apparent that the character and scope of the obligations contained in the two mentioned conditions of the bond are to all practical intent and purpose the same as those specified in the statute. Hence, the bond in the content of its conditions conforms to the statute unless it can be said that the inclusion in it of an undertaking not required by the statute and in excess thereof is efficient to divest it of its characteristics in that respect.

This extra condition provides that the principal contractor "shall indemnify and hold harmless said District and said Town from any and all claims and demands which may be made upon said District said or Town as a result of anything done or omitted by said principal in connection with the carrying out of said contract." Such a provision is one of indemnity for the special benefit of the obligees District and Town. *Byram Lumber & Supply Co. vs. Page,* 109 Conn. 256. It neither broadens, lessens or otherwise affects the engagements of the principal contractor or sureties as these would be in a bond containing the specified conditions of the statute only. By the weight of authority such a provision additional to others required by and conforming to those directed by statute, is without effect upon the statutory conditions contained in the writing either as respects the validity

of the latter or their enforceability by those for whose benefit they are required to be inserted, since neither the statute under consideration, nor any other, declares that bonds not wholly conforming thereto shall be void. *Robertson & Govanne Contr. Co. vs. Aetna Accident & Liability Co.*, 91 Conn. 129, 133; 4 R.C.L. Bonds §13; 11 C.J.S. Bonds §25, subd. c; 8 *Am. Jur.* Bonds §32. While no claim is presented here under the additional condition in question, it may be parenthetically noted that in some cases brought to enforce liability under the statutory conditions such provisions have been rejected as mere surplusage (*American Surety Co. vs. Tarbutton* (Tex. Civ. App.), 248 S.W. 435, 437; *Long Bell Lumber Co. vs. Carr Const. Co.*, 172 La. 182, 187, 133 So. 438, 440; *Mass. Bonding & Ins. Co. vs. State*, 82 Ind. App. 377, 146 N.E. 116, 117; *General Asbestos & Supply Co. vs. Aetna Casualty & Surety Co.*, 101 Ind. App. 207, 198 N.E. 813, 817; *People for use of Sochet vs. Sochet*, 70 Colo. 23, 196 Pac. 192, 193; *Western Casualty & Guaranty Ins. Co. vs. Board of Commissioners, etc.*, 60 Okla. 140, 159 Pac. 655, 659, L.R.A. 1917B, 977; *Trustees, etc. vs. Chambers*, 240 Ill. App. 295, 302); in others, as where the extra condition is repugnant to the statutory conditions, as not only surplusage, but as such void (*U.S.F. & G. Co. vs. Iowa Telephone Co.* 174 Iowa 476, 156 N.W. 727, 732; *United States vs. Bradley*, 10 Pet. 343, 364; *United States vs. Hodson*, 10 Wall. 395, 408; *United States vs. Mora*, 97 U.S. 413, 422; *City of Charleston, etc. vs. Dawson*, 85 W. Va. 353, 101 S.E. 728, 729; *Sauer vs. Fidelity & Deposit Co. of Md.*, 192 Ky. 758, 234 S.W. 434, 436; *State vs. Read*, 164 La. 315, 113 So. 860, 863, 54 A.L.R. 383; *Fairmont Cement Stone Mfg. Co. vs. Davison*, 122 Minn. 504, 142 N.W. 899, 901). It is usually held, however, that such excess conditions, where no statute declares them invalid, may themselves be enforced in a direct action based upon them as common-law obligations. *American Surety Co. vs. School District, etc.*, 117 Neb. 6, 219 N.W. 583, 589; *Clatsop County ex rel. Hildebrand vs. Feldschau*, 101 Ore. 369, 199 Pac. 953, 18 A.L.R. 1221; *Merchants Mut. Cas. Co. vs. U.S.F. & G. Co.*, 253 App. Div. 151, 2 N.Y.S. (2d) 370; *Fitzgerald vs. Neal*, 113 Ore. 103, 231 Pac. 645, 647; *Western Steel Castings Co. vs. Edland*, 187 Wash. 666, 61 P. (2d) 155, 156.

In so far as the content of its conditions is concerned the

foregoing considerations would denominate the bond under consideration as statutory, but whether it is such in finality depends upon whether the character of the project was itself one within the contemplation of such statute. The contention most insistently urged by the plaintiff is that the bond is one not required by section 1594c because that statute does not specify that such an undertaking be furnished in connection with the performance of a public work of the character described in the contract in the present instance, viz., the construction of a reservoir dam and its appurtenances. The classes of projects enumerated in the statute are: "the construction, alteration, removal or repair of any public building, public road, public sewer or public bridge...." Since a reservoir does not fall within the categories of any of the others enumerated, it is obvious that if it is within the purview of the statute at all, it is because it is a "public building" within the meaning of that term as there employed. Plaintiff insists that the term "public building" is used in a commonly understood sense as indicative of a construction "designed for the habitation of man or animals or for the shelter of property", the distinguishing feature of which is that it encloses "a space within its walls usually covered with a roof." 9 C.J. *Building*. Stress is laid, too, upon the observation that if it were the statutory intention that the provisions in question apply to all classes of public works, it would have been a very simple matter for the General Assembly to have said so in language admitting of no doubt of its meaning. The fact that this was not done, but on the contrary the statute is made to apply to projects of enumerated characters only, it is claimed, excludes by implication all others—recourse being had in this connection to the familiar rule of statutory construction to the effect that where certain rights of action are enumerated all others are excluded. *Young vs. Roodner,* 123 Conn. 68, 73. *See, also,* for other applications of the same principle, *Hill vs. Employers' Liability Assurance Corp., Ltd.,* 122 Conn. 193; *State vs. Mele,* 125 id. 210, 213. Patently, if the stated definition of a building as forming part of the term "public building" be adopted, the statute does not comprehend such a project as that with which concern is had in this case.

The defendants, on the other hand, urge that the term is used in another and more comprehensive but equally authentic sense, viz., as connotative of "structure." This latter in con-

struing a statute of similar purpose as that involved here has been defined to include, in both its etymological sense and in common usage, a thing "composed of parts and portions which have been put together by human exertion" and so to include the construction of an improved highway. *State ex rel. W. Va. Sand & Gravel Co. vs. Royal Indemnity Co.,* 99 W. Va. 277, 287, 128 S.E. 439, 443, 43 A.L.R. 552, 559. That idea was frowned upon, however, in construing the statute considered in *State vs. Barr,* 39 Conn. 40, 44. In this connection some reliance is placed on the title of the statute under examination, which, as it appears in the 1935 Cumulative Supplement to the General Statutes, reads: "Bonds for protection of employees and materialmen on public structures." This may be considered in determining the legislative intent even though it is not decisively persuasive. *State vs. Muolo,* 119 Conn. 323, 330; *State vs. Faro,* 118 id. 267, 272. Such considerations as these, however, are seldom completely determinative since it is usually the case, as it is here, that the question is not one of merely selecting a particular meaning of a word, out of more than one which it signifies, but of determining in what sense it is employed in the particular statute which is the subject of construction. Of greater aid in this pursuit, is the consideration of the Act as a whole viewed in the light of its history and the policy underlying its enactment (*Connor vs. Spellacy,* 122 Conn. 36, 46; *Pelton & King, Inc. vs. Town of Bethlehem,* 109 Conn. 547, 551) — the object which it was ordained to achieve. *People's Holding Co. vs. Bray,* 118 Conn. 568, 571. This latter, as stated in *Pelton & King, Inc. vs. Town of Bethlehem, supra,* p. 556, is ".... to protect and benefit those who furnish materials and labor to the contractor on public work, in that they may be assured of payment of their just claims, without defeat or undue delay...." and that ".... without express or implied reference to whether as against a private owner, mechanic's liens might attach therefor." This purpose is reiterated in *New Britain Lumber Co. vs. American Surety Co.,* 113 Conn. 1, 7.

However, the *right and authority* of the State, its officers, agencies and subdivisions, to exact bonds of contractors obligating the latter to pay for labor and materials furnished in connection with public projects both State and municipal, as distinguished from a legal *duty* so to do, requires the sanction

of no statute. That power exists by implication. *Kaufmann vs. Cooper*, 46 Neb. 644, 649, 65 N.W. 796; *Federal Union Surety Co. vs. Commonwealth*, for use of *Vandiver, etc.*, 139 Ky. 92, 103, 129 S.W. 335; *American Surety Co. vs. School District, etc.*, 117 Neb. 6, 219 N.W. 583, 591; *State ex rel. West Virginia Sand & Gravel Co. vs. Royal Indemnity Co.*, 99 W. Va. 277, 128 S.E. 439, 43 A.L.R. 552, 555; Anno. 27 L.R.A. (N.S.) 601, 11 L.R.A. (N.S.) 1028.

Nevertheless, while they possessed the right to do so, even before the enactment of the first statute dealing with the subject (viz., Public Acts of 1917, chap. 118, incorporated verbatim in Gen. Stat. [1918] §5221; *Pelton & King, Inc. vs. Town of Bethlehem, supra* p. 551) there was no *compulsion* on either the State, its agencies or municipal bodies to require that bonds taken by them in connection with contracts for public work contain provisions for the protection of persons furnishing either labor or material to the principal contractor for such projects. If this premise be sound, as it is believed that it is, both upon authority and legal principle the statutes concerning the subject from the first in 1917 to the last, viz., section 1594c of the 1935 Cumulative Supplement to the General Statutes must be considered in the light of it. This done, the legislation becomes explicable—particularly in its failure to apply to all public works and on the contrary, in its enumeration of certain classes of projects, only.

For on such premise, the purpose of the legislation is revealed, not as delegating an additional or original power to State agencies and subdivisions but as making it *mandatory* in the instances enumerated (but leaving it discretionary with them in all other cases) upon the various governmental agencies to exercise a power already resident in them, but at the same time making the right in those who furnish labor or material for public works thereby created, subject to certain conditions precedent. The expansion (a) of the number and character of State agencies and subdivisions upon which such duty was imposed as the legislative design developed, as well, also, (b) of the various kinds of public works in connection with which it was made mandatory, are both easily traceable. The first enactment (viz., Public Acts of 1917, chap. 118) applied only to "any officer....of the *state* or any sub-division thereof [contracting for] the construction, alteration, removal or repair of any public *building*...." (italics added), but to

no other form of public work except bridges and to the latter only when constructed pursuant to the provisions of Public Acts of 1915, chapter 337, incorporated in the Revision of 1918 as section 1509, i.e. such as should be constructed on trunk line highways by the State Highway Commissioner, in or between towns having a population of 10,000 or less, requiring a span of more than 25 feet where the State was to be reimbursed as the result of an apportionment of the expense between the towns, electric street railway companies, etc.

In 1925 the General Assembly enacted a statute identical in its operative provisions (with the exception of one which is of no consequence to the instant inquiry) with the 1917 Act, which applied, however, exclusively to *towns, cities* and *boroughs* and *subdivisions* of each, but included public works additional to those stated in the 1917 Act, viz., "any *public building, public road, public sewer* or *public bridge.*" (Public Acts of 1925, chap. 170; italics added.)   This distinction between the more inclusive range of contractual subject matters as to which the provisions of this statute concerning municipal bodies and their subdivisions were operative and the comparatively less number to which the statute applicable to the State and its subdivisions related was emphasized in the enactment of chapter 121 of the Public Acts of 1927.   This amended section 5221 of the General Statutes, Revision of 1918 (the original 1917 Act) by expressly excepting the State Highway Department from its provisions.   It continued the terms of the 1917 Act as limited to buildings only, contracted for in behalf of the State through any of its officers and agents and made the only bridges subject to its provisions those contracted for under the requirements of chapter 237 of the Public Acts of 1925, which latter deals solely with the cost of construction and maintenance of bridges on trunk line highways and the apportionment of the cost of same.

Finally, in the Revision of 1930 (§5109), section 5221 of the General Statutes, Revision of 1918, chapter 237 of Public Acts of 1925 and chapter 121 of Public Acts of 1927, were all combined and so remain, in so far as the portions thereof with which concern is had here, as section 1594c of the 1935 Cumulative Supplement to the General Statutes, recited in the footnote.   As so put together, specific reference to municipalities as such is omitted.  These are intended to be included in the phrase "state or any subdivision thereof" as em-

ployed therein. The statute now makes no distinction between public works concerning which bonds containing a condition for the protection of persons furnishing labor and materials are required between State agencies and municipal corporations but applies to all alike. The nature of projects to which the provisions of the statute make such requirement, with the exception of buildings, is identical with those specified in the original Act applying to *towns* and other *municipal governments* in chapter 170 of the Public Acts of 1925, viz., "public road, public sewer or public bridge", the limitation to any "public building" and bridges constructed only on trunk line highways by officers and agents of the State being dropped.

It is evident from this resume of the history of the legislation which has culminated in the statute in its present form that had the General Assembly at any time intended that the provisions of the latter or any of its predecessors should encompass public works of all kinds, it could have said so in one general term, as was the case, for example, in the statute considered in *State vs. Southern Surety Co.*, 221 Ala. 113, 127 So. 805, 70 A.L.R. 296, 300. On the contrary, the idea is repudiated by a consistent avoidance of such a concept by the selectivity evidenced from the first expression on the subject to the present and last one, both as respects the instances when such bonds shall be required with reference to the State and its agencies as distinguished from the various types of municipalities and likewise the specific enumeration of the characters of public works to which such provisions should be applicable with respect to each. What considerations may have induced the several legislatures which have convened since the first expression on the subject to refrain from making the provisions in question of general application to all public works, it is no forte of the courts to inquire. It is enough that it is manifest that it has done so.

It follows that to attribute to the term "public building", as that appears in the statute, a meaning that would in practical effect be comprehensive of every other form of public structure not enumerated in the statute would violate the fair intendment of the language of the Act read as a whole. In fact, if it were used in the sense for which defendant contends it would include such public works as the statute specifics, viz., roads, sewers and bridges and there would have been

no point in naming these. All of which connotes that the phrase in question must be considered in its ordinary and conventional meaning and as thus excluding a reservoir dam and its appurtenances from its intendment. *See State ex rel. Robinson vs. Town of Columbia,* 111 Mo. 365, 20 S.W. 90, 92, 93. The conclusion, hence, is that the construction of such a public project is not within the purview of the statute and that the bond in suit is not one required by or given in accordance with its requirements. *Robertson & Govanne Contr. Co. vs. Aetna Accident & Liability Co.,* 91 Conn. 129, 132, 133. The force of this determination is not weakened by the circumstance that among the various work required to be performed under the contract, was the completion of the construction of two partially built gate houses and certain drives, roads and bridges within the land owned by the District surrounding the reservoir and giving access to certain public highways. The statute is directed at the character of a project as a whole and makes no provision for separating it into the several portions or kinds of work of which it consists. But if it did, the fact would not avail the defendants since (1) the gate houses were not separate buildings but merely appurtenances to the dam, housing certain apparatus necessary for the operation of the reservoir; and (2) the roads and bridges being located within the area of the surrounding land were of service in connection with the reservoir only and not for the general use of the public. None of them was a "public road" or "public bridge" within the comprehension of these terms as employed in the statute. It follows, *a priori,* that the plaintiff was not required to file its claim within 60 days after ceasing to furnish labor or material, as would have been the case if the bond in question were one required by or given in pursuance of the statute (Cum. Supp. [1935] §1594c) and that the failure to do so as alleged in the first paragraph of the special defense interposes no barrier to its recovery in the present action. *See American Employers' Ins. Co. of Boston vs. Lee & Kincaid Coal Co.,* 226 Ala. 262, 264, 146 So. 408, 409, which is not directly in point, but which holds in considering a private bond containing provisions of the same purport as those required by statute: "The special procedure under state contracts is wholly inapplicable to bonds of the class before us. It is the obligation of such bond, not the procedure for the enforcement of such obligation, which is written into the bond in suit." That reasoning is as ap-

plicable to a bond given in connection with a contract for the construction of a public work, but not required by statute, as it is in the circumstances obtaining in the case cited.

In view of the conclusions stated *supra,* the following questions occur: (d) whether plaintiff is entitled to recover on the bond and if so, (e) whether as for "materials used in the carrying out of said contract" or as for "labor performed or furnished" for the same purpose; and (f) in any event whether for the reasonable value of the materials so used or for labor performed or furnished upon the basis of the unit prices fixed in the agreement with the subcontractor; and in any case (g) whether, if plaintiff prevails, the judgment should be rendered against the principal contractor alone, or against the latter and the sureties on the bond, jointly.

"The weight of authority, and certainly the view more in keeping with the spirit of modern jurisprudence, sustains the right of a person furnishing labor or materials to recover on a private building contractor's bond in which the owner of the property is named obligee, conditioned that the contractor shall pay all claims for labor and materials, or that he shall pay laborers and materialmen." *Anno.* 77 A.L.R. 21, 56. *See, also, Anno.* 118 id. ·57, 65. Such a right is recognized and enforced in this State. *Byram Lumber & Supply Co. vs. Page,* 109 Conn. 256. The bond upon which the instant action predicates is one given in connection with a contract for a public work by a political subdivision of the State. *Sachem's Head Property Owners' Asso. vs. Guilford,* 112 Conn. 515, 517. Of such an obligation it has been said: "Undoubtedly the tendency has been *stronger* to uphold the right of action in the case of contracts with municipalities or other public agencies, because of the greater likelihood that in the making of such contracts regard would be paid to the interests of those who might furnish labor or materials, and to the broader considerations arising out of the policy of assuring them a more secure basis for entering upon the work." (Italics added.) *Byram Lumber & Supply Co. vs. Page, supra,* p. 263. The authorities elsewhere support this statement and afford recovery where the intention to confer the right upon those furnishing materials or labor is manifest. *Anno.* 77 A.L.R. 21, 89; 118 id. 57, 72; *Corn Belt Bank vs. Maryland Casualty Co.,* 281 Ill. App. 387.

Plaintiff's relation to the construction, however, occurred

as the result of an agreement between it and a subcontractor. Defendants contend, that whatever else may be encompassed within the legal intention of the clause under examination, the obligation arising from it does not comprehend claims on the part of persons furnishing labor or materials used in a project to a subcontractor, but at the most extends to and stops at liability to the latter. In the instance of *statutory* bonds containing conditions of the same or like purport as that in question here, the authority opposing defendants' contention and on the contrary affirming such right of recovery in this class of persons is "overwhelming" notwithstanding that the courts of some states either disagree or distinguish on one or more grounds. No analysis of the cases is required here. Reference is made to two annotations where many that are representative of judicial thought on the subject are collected and discussed, viz., 70 A.L.R. 308; 111 id. 311. *And see, State vs. Southern Surety Co.,* 221 Ala. 113, 127 So. 805, 70 A.L.R. 296. In construing a bond containing provisions of substantially the same effect as those in the instant case, given pursuant to a Federal statute, the United States Supreme Court (Justice Day) stated the purpose of such provisions and held that one furnishing labor or material to a subcontractor was within the scope of the remedy afforded, in this language: "But we must not overlook, in construing this obligation, the manifest purpose of the statute. to require that material and labor actually contributed to the construction of the public building shall be paid for and to provide a security to that end....If a construction is given to the bond so limiting the obligation incurred as to permit only those to recover who have contracted directly with the principal, it may happen that the material and labor which have contributed to the structure will not be paid for, owing to the default of subcontractors and the manifest purpose of the statute to require compensation to those who have supplied such labor or material will be defeated." *Hill vs. American Surety Co.,* 200 U.S. 197, 203, 204, 50 L. ed. 437, 26 Sun Ct. Rep. 168. The rationale thus expressed has been consistently adhered to and applied in *Mankin vs. Ludowici-Celadon Co.,* 215 U.S. 533, 54 L. ed. 315, 30 Sup. Ct. Rep. 174; *U. S. Fidelity & Guaranty Co. vs. Bartlett,* 231 U.S. 237, 58 L. ed. 200, 34 Sup. Ct. Rep. 88; *Illinois Surety Co. vs. John Davis Co.,* 244 U.S. 376, 61 L. ed. 1206, 37 Sun. Ct. Rep. 614; *Brogan vs. National Surety Co.,* 246 U.S. 257, 62 L. ed.

703, 38 Sup. Ct. Rep. 250; *Fleischmann Construction Co. vs. Forsberg,* 270 U.S. 349, 70 L. ed. 624, 46 Sup. Ct. Rep. 284.

As already noted, the bond upon which the instant action is based is not statutory. But the District was a municipal body and public corporation and, as observed *supra,* possessed the implied right and authority to exact such a stipulation for the same purposes as underlie section 1594c, *supra.* The identity of considerations which inspired the adoption of the Acts now consolidated in section 1594c, *supra,* with those which must be found to have animated the inclusion of the provision in question among the conditions of the bond in suit, require that the same construction be applied to the latter as to the former in respect to such conditions. *Molony & Carter Co. vs. Pennell & Harley, Inc.,* 169 S.C. 462, 169 S.E. 283, 286, 287. In the citations made in support of the determinations which follow, no distinction is, hence, observed between those which apply to common-law bonds or statutory bonds guaranteeing the payment of labor furnished or materials used in the performance of contracts for public works.

The conclusion stated is not in conflict as defendants contend it is with the holding in *Byram Lumber & Supply Co. vs. Page,* 109 Conn. 256, in which case the plaintiff was a concern which had furnished materials directly to the principal contractor. The question decided there was (p. 261): "....does it appear from the terms of the bond viewed in the light of surrounding circumstances that the purpose of the promisee, that is, the defendant Page, was to bestow upon those who had or should thereafter have contracts *directly* with the Warhurst corporation for labor and materials to be used in the construction of the building a right to proceed directly against the surety on the bond." (Italics added.) That was the only question which could be decided there since the condition of the bond in that case conferred a right of recovery only upon "....persons who have contracts *directly* with the principal for labor or materials...." (Italics added.) The question presented here, viz., whether one furnishing labor and materials to a subcontractor may recover from the principal and surety on a bond conditioned as is the one in suit where there is an absence of any limitation of right to its benefits to those only "who have contracts *directly* with the principal", was not before the court and, hence, not passed upon. The rule prevailing in the great majority of jurisdic-

tions is that recognized and in effect that adopted *supra*, in *Jackson County, etc. vs. Freeborn Engineering & Construction Co.*, 174 Mo. App. 28, 160 S.W. 271, where it was held, in substance, that "if the terms of the contract and the bond are broad enough to include the materialmen furnishing materials to the subcontractor, as *where the condition of the bond is not restricted to the payment for materials furnished directly to the contractor*, but extends to the payment of all materials furnished in the construction of the building, there is no reason why the materialmen furnishing material to the subcontractor should be denied the relief on the bond." *Anno.*, 70, A.L.R. 308, 311. (Italics added.) The matter, as stated in the opinion in *Byram Lumber & Supply Co. vs. Page*, *supra*, p. 260, explaining the decision in *Baurer vs. Devenis*, 99 Conn. 203, is wholly one of intention to be ascertained from the terms of the contract and bond considered in the light of the situation of the parties and the circumstances under which they act. *Royal Indemnity Co. vs. Day & Maddock Co.*, 114 Oh. St. 58, 150 N.E. 426, 44 A.L.R. 374, 380, 381.

It is the conclusion that the benefit of the provision in dispute extends to persons furnishing labor or materials to a subcontractor himself engaged in furnishing labor and materials in performance of a contract with the principal contractor for the execution of the work, and that the plaintiff here as one of that class is entitled to recover (*Anno.* 70 A.L.R. 308, 311 *et seq.*, 111 id. 311, 313 *et seq.*), although there is some authority to the contrary (*Anno.* 70 A.L.R. 308, 311 *et seq.* and 111 id. 311, 320 *et seq.*). And this notwithstanding that the subcontractor has been paid in full. *Heine Safety Boiler Co. vs. United States, etc.*, 35 App. D.C. 273; *State ex rel. Kingsley vs. Carterville Const. Co.*, 220 Mo. App. 244, 284 S.W. 150; *St. Louis, etc. vs. Hill-O'Meara Const. Co.*, 175 Mo. App. 555, 158 S.W. 98, 101; *Smith vs. Mosier*, 169 Fed. 430, 435; *Moore vs. Builders Material Co.*, 192 N.C. 418, 135 S.E. 113, 114; *Deacon Bros., Inc. vs. Starrett Bros. & Eken, Inc.*, 18 Fed. Supp. 671. See, also, *Sherman Machine & Iron Works vs. Iverson Specialty Co.*, 171 Okla. 641, 43 Pac. (2d) 1044; *Davy Fuel & Supply Co. vs. Ratcliffe Plastering Co.*, 260 Mich. 276, 244 N.W. 472; *Anno.* 70 A.L.R. 308.

The apprehension expressed by defendants that the con-

clusion just stated may lead to an "absurd situation in that it might be carried on *ad infinitum*", meaning that the benefit of such provisions in a bond might with equal cogency be extended to persons supplying labor and material to others furnishing the same to a subcontractor is not valid. No such misgiving was harbored by the General Assembly in enacting what are now sections 5105 and 5106 of the General Statutes, Revision of 1930, under which it is held that persons furnishing labor or materials to a subcontractor in the construction, etc., of a private building may have a mechanic's lien. *Byram Lumber & Supply Co. vs. Page, supra*, p. 265; *Chapin vs. Persse & Brooks Paper Works*, 30 Conn. 461, 471. However, that question is not involved in the instant decision. But it may be noted that in a few cases where it has arisen the tendency is to recognize no such right as existent in persons performing or furnishing labor or materials more remote than those so doing to a subcontractor unless the obligation of the bond specifically provides otherwise. *See Republic Creosoting Co. vs. Foulkes Contracting Co.*, 103 Ind. App. 457, 8 N.E. (2d) 416, 417; *Marsh vs. Rothey*, 117 W.Va. 94, 183 S.E. 914, 915; *State vs. U.S.F. & G. Co.*, 117 Ore. 616, 244 Pac. 872.

In the complaint, in the instant case, it is alleged that before the plaintiff entered into the agreement with the subcontractor to "manufacture" the stone pieces in question it was "aware" that the subcontractor had filed with the District "the joint and several surety bond in the amount of said contract." The evidence, however, does not clearly indicate whether in fact plaintiff at the time so stated, or before it commenced to fabricate the stone, knew that a bond had been given by the principal contractor to the District or whether, if it was then cognizant of that circumstance, then that such bond contained a provision for the protection of persons supplying labor or materials for the project. However, plaintiff's right to recover under the bond is not dependent upon its knowledge of the condition in question therein or its reliance thereupon in undertaking, or in the actual furnishing of labor or materials. Thus, in the statement of facts contained in the opinion in *Byram Lumber & Supply Co. vs. Page, supra*, p. 259, it is noted that the plaintiff there "was informed that there was a bond on the job" before entering into its contract with the principal contractor, "but it never saw the bond or knew its

terms." This is equivalent to saying that the plaintiff in that case did not know that the bond there in suit contained a provision available to protect persons furnishing labor or materials to the principal contractor for that project. From which, of course, it follows that that plaintiff could not be said to have contracted with reference to or in reliance upon such provision or that the undertaking to furnish materials was an "adoption" of the terms of the principal contract requiring such a bond, as is said in some of the cases which attempt to theorize a legal basis upon which to predicate liability to a so-called third party beneficiary. It is a distinct characteristic of the rules of law allowing recovery in such instances, although some of the cases still give evidence to the contrary, that the whole technical paraphernalia of "privity", "consent", "acceptance" and the like is discarded in favor of effectuating the revealed intent of the parties to the principal contract and realistically recognizing and enforcing rights conferred on third parties by such provisions as are contained in the bond here in suit, even though such persons have no knowledge of the existence of the provision made for their benefit prior to or at the time labor or materials are supplied by them and do not learn of it until after they have fully performed. See cases collected in annotation in 77 A.L.R. 21, 41 *et seq.*, and 118 id. 57, 61, *et seq.* It follows that the circumstance—if such was the case—that the plaintiff here had no knowledge of the existence of the bond in suit, at the time it contracted with the subcontractor or at any period before it had fully performed such agreement, or that even though it was informed of it, yet was unaware that it contained a, or the particular, provision for the protection of persons performing or furnishing labor or materials used in the prosecution of the work, does not operate to deprive it of its right to the benefit of such provision or to maintain an action to enforce such right of recovery as is thereby conferred upon it.

Nor was the plaintiff's right to the benefit of the provision under discussion lost or qualified by the fact that the subcontractor delivered to the plaintiff and the latter accepted and presented to the principal contractor an order on the latter in the sum of $3,500, pursuant to which, however, no moneys were ever paid plaintiff. As put by defendants in their brief: "This latter order was to be paid only in the event that there

was money due The Quarries Operating Corporation from B. Perini & Sons, Inc., at the completion of the work. It is agreed that B. Perini & Sons, Inc., has paid The Quarries Operating Corporation in full and, consequently, there were no funds left to recognize said order of $3,500.00." Under the conditions named and the other surrounding circumstances there is no foundation for a claim by defendant that the acceptance and use by plaintiff of such order constituted payment pro tanto (Elm City Lumber Co. vs. Mackenzie, 77 Conn. 1, 5) any more than would have been the case had a note been given the plaintiff by the subcontractor. Burritt Co. vs. Negry, 81 Conn. 502; Waterbury Lumber & Coal Co. vs. Asterchinsky, 87 id. 316, 322; McRae Grocery Co. vs. Independent Indemnity Co., 33 F. (2d) 494, 66 A.L.R. 338, 341; Fidelity & Deposit Co. vs. John Gill & Sons Co. (Mo.), 270 S.W. 700, 704. See, also, in this connection, Portland Building & Loan Asso. vs. Peck, 110 Conn. 670, 677. In the absence of an agreement to the contrary the presumption is that payment is to be made in cash. Santoro vs. Mack, 108 Conn. 683, 689. The burden of rebutting this is on a defendant, who also must specially plead payment if it is relied upon as a defense. Archambeault vs. Jamelle, 100 Conn. 690, 698. No such defense has been thus interposed by any of the defendants here.

Neither did the acceptance of such order and the presentation of it to the principal contractor constitute a waiver of any of plaintiff's rights or remedies under the bond. A "waiver is the intentional relinquishment of a known right." National Trans. Co., Inc. vs. Toquet, 123 Conn. 468, 475. The conditions under which the order was given and upon which its efficacy to procure payment to the plaintiff were predicated are inconsistent with an intent on plaintiff's part to abandon any right which it possessed. On the contrary they evince a purpose to retain all such rights and to leave the plaintiff's status in so far as the enforcement of them is concerned, unaffected in event such order was not accepted by the principal contractor, or, if accepted, the payment which it called for was not made. Burritt Co. vs. Negry, supra. Neither can the defendants, with face, urge that because the plaintiff accepted and endeavored to obtain payment through the medium of such order that the plaintiff is now estopped to claim the benefit of the condition of the bond which it invokes in this action. The essence of an estoppel in pais is conduct upon

the part of one party by which the other is induced to change his legal position to his detriment. *National Trans. Co., Inc. vs. Toquet, supra,* p. 477. The evidence fails to establish that at the time the order was given plaintiff by the subcontractor, the principal contractor had not already paid the subcontractor in full. In fact, the implications are that when the order was accepted by the principal contractor, the latter owed nothing to the subcontractor. In either case there is no basis for any claim that the principal contractor was prejudiced. The difficulty with the contention, too (if the facts were otherwise), is, that no duty was imposed upon the plaintiff to notify the principal contractor of the status of its account with the subcontractor in such season that the principal contractor would be able to retain from the moneys due the subcontractor, a sum equivalent to any amount owing by the subcontractor to plaintiff. *See Commonwealth vs. National Surety Co.,* 253 Pa. 5, 97 Atl. 1034, 1037; *Mankin vs. Ludowici-Celadon Co.,* 215 U.S. 533, 540. For as noted. *supra,* the right created and the remedy provided by the condition in the bond inhered in plaintiff as one who had furnished labor or materials used in the construction, quite independent of whether it even knew that there was a bond or the content of its provisions and hence called for no action on its part to apprise either the district or the principal contractor either of the fact that it held a claim or the amount of it. Since it was under no obligation in this respect, its failure to inform the principal contractor and its acceptance of the order could not in any event be efficient to cause the principal contractor to change its position to its detriment. Quite the contrary, the duty was upon the defendants to protect themselves in this regard, among other ways, for example, by requiring those with whom the principal contractor dealt "to give security by bond, or otherwise, for the payment of such persons as furnish work or labor to go into the structure." *Hill vs. American Surety Co.,* 200 U.S. 197, 204; *Mankin vs. Ludowici-Celadon Co.,* 215 U.S. 533, 540. Plaintiff's right to maintain the instant action was, consequently, unaffected by the fact that it accepted the order in question, presented it to the principal contractor and endeavored to procure payment of its claim by making such use of it.

By reason of the foregoing conclusions, the question arises (viz., "e" *supra*) whether plaintiff is entitled to recover as

one who has performed or furnished labor or as one who has supplied "materials used" in the construction of the dam and its appurtenances. Plaintiff's contribution to the project was the result of its performance of a written agreement between it and the subcontractor. By the terms of this, the subcontractor undertook to furnish plaintiff with rough granite saw blocks, none of which was to weigh more than 11 tons. This material, the plaintiff was to truck to its plant from the subcontractor's premises and there make from it "some portions of Items 39 and 45" as designated in the plans and described in the specifications. These called for a great number of finished pieces of various sizes, shapes and dimensions as indicated in detailed drawings furnished plaintiff from time to time. In performing its undertaking with the subcontractor, the following was the course of the work: As the saw blocks arrived at plaintiff's plant each was placed upon a power operated gang saw and cut "one split." The pieces were then taken off and smaller blocks obtained from each of them by the use of a pneumatic device and drill manned by one operator. The sections thus resulting were then cut and fashioned to the required dimensions and shapes by hand by skilled stonecutters. Sixty per cent of the work was "direct labor", but whether this includes the handling of the rough saw blocks in transporting them to plaintiff's plant, unloading them on arrival, placing them on the gang saws and thereafter moving the rough or semiprocessed material about until the finished pieces were deposited upon the subcontractor's trucks for delivery to the job, is not clear in the evidence. Forty per cent is designated "indirect labor" and "general expense" which, apparently, includes such items as factory overhead (inclusive of superintendence), workmen's compensation insurance premiums, social security taxes, profits and the like. The subcontractor agreed to pay the plaintiff upon a unit basis, i.e., at prices ranging from $2.49 to $3.55 per square foot for certain of the items, $185 to $1,135 per course for others and the remainder from $8.00 to $1,116 for each specified single piece.

Upon these facts counsel for all the parties seem to agree in the conclusion that the role in which plaintiff engaged was that of performing or furnishing labor and not that of supplying "materials used" in the construction of the dam and its appurtenances, within the meaning of the bond. And so,.

upon that premise the defendants contend that the bond con-
templates only manual or "direct" labor which, of course, ex-
cludes "overhead and profits." As a practical matter, it is
probable that it makes little or no difference under the facts
in the instant case whether plaintiff's performance of its con-
tract with the subcontractor be denominated labor furnished
or "material used." Eligibility to participation in the benefits
of the bond under the condition in question depends upon
whether the service rendered falls within any of the classifica-
tions contained therein (i.e. labor performed or furnished or
material supplied and used in the prosecution of the work de-
scribed in the principal contract), but the measure of recovery
is not controlled by whether it be one or the other, so long
as it is either of them, but by the *value* contributed to the
construction in some one or more of the specified manners.
In treating the plaintiff's contribution to the construction of
the dam and its appurtenances as one of labor expended in
making the rough stock into finished items and then contend-
ing that the plaintiff may be allowed a recovery for the "direct"
labor involved, only, defendants apparently consider that the
situation presented is one of "labor performed" within the
meaning of the pertinent condition in the bond. It is true
that instances of "labor performed" may be conceived in
which nothing could be allowed except the bare worth of what
is manually done. But if it can be said that plaintiff's con-
tribution was one of labor, only, it was not that of labor per-
formed, but of labor furnished at unit prices. Such being
the case, plaintiff is entitled to be compensated on that basis,
provided, at least, that it appear that such unit prices were
not in excess of the fair and reasonable value of the work done.
It is hence quite immaterial that they include "overhead",
"general expense", or profits. *Fulghum vs. State of Florida,*
92 Fla. 662, 109 So. 644, 646; *Blair & Franse Const. Co. vs.
Allen,* 251 Ky. 366, 65 S.W. (2d) 78, 80. And see, *Cam-
denton Consol. School Dist., etc. vs. New York Casualty Co.,*
340 Mo. 1070, 104 S.W. (2d) 319, 329, where this was im-
pliedly assumed. Defendants are overruled in their conten-
tion that the fact that the unit prices charged by plaintiff for
the work done by it (considered as labor furnished within the
intendment of the condition in question in the bond) included
elements of "overhead" and profits, operates to reduce the
amount recoverable accordingly and that the plaintiff may
only be allowed such a sum as is the equivalent of the value

of manual or "direct" labor involved in the manufacture of the material.

However, the question whether plaintiff's contribution to the project was one of labor furnished or materials used in the performance of the principal contract is involved and must be considered. As suggested on the trial, the court is unable to vie in counsels' view that plaintiff's contribution to the prosecution of the work constituted either the performance or furnishing of labor. On the contrary, the holding is that it consisted of "material used" within the meaning of that term as employed in the condition of the bond. This notwithstanding that counsel have cited and the court's own research has unearthed no case factually the same as the situation here, i.e., where a subcontractor has furnished the rough material to another who by the use of machinery and mechanical devices and the application of hand labor has fashioned completed items from it ready for incorporation into a structure. It would be pointless to quote definitions, such as may be found in the books, of "labor", "materials", "materialmen", etc. The sense in which such terms are used is nearly always dependent upon the particular statute, bond or other contract in which they appear. The meaning of the word "materials" as employed in the bond under examination must "be ascertained from the contract including the specifications, construed like any other contract in view of the work to be performed and in the light of the circumstances surrounding the transaction." *United States, etc. vs. U.S.F. & G. Co.*, 82 Vt. 94, 101, 71 Atl. 1106, 1109. A pertinent "other condition" in such bond is that which reads: "That....the said principal shall well and truly keep and perform all the agreements, terms and conditions of said contract on its part to be kept and performed." The contract thus referred to specifies in detail what materials are to be used and formed into the reservoir and its appurtenances by the labor necessary to accomplish that result. Obviously, the "materials used" for which the contractor and the sureties undertook to pay are all of those which are designated in the specifications, and these include those made by the plaintiff. Or to state it otherwise, the "granites" fashioned by the plaintiff in its plant are "materials" to be supplied for the project by the contractor within the meaning of the contract, inclusive of the specifications, and it is in that sense, alone, that the question of whether the

fabricated stones constitute "materials used" or labor performed or furnished within the meaning of the condition in question of the bond is to be determined.

The mere circumstance that the subcontractor furnished the plaintiff with the rough stock out of which the several pieces of finished material was manufactured is unimportant, since palpably the question at issue is not controlled by the measures taken to produce and supply the material, but solely and only by whether when the "granites" made were delivered to the site of the project and incorporated into the structure, they were such materials as the contract specified and required the principal contractor to furnish and when furnished, install, in the performance of his obligations. Palpably in this view of the situation it could make no difference whether such "granites" were made by the principal contractor, by his subcontractor from stone obtained by the latter from its own quarries, or by the plaintiff with granite purchased by it or, as was done, by the latter from stone furnished by the subcontractor. In either case, in so far as the contract is concerned, it is the material required by the specifications which is furnished to and "used" in the carrying out of the project, when in its finished form it is delivered to the site and installed, and that without regard to the business arrangements between the contractor, the subcontractor and the manufacturer of it. The fact that the subcontractor furnished the rough stone which when treated by machine and by hand produced the fashioned items had to do only with the cost of the stones, as between the subcontractor and the plaintiff, but even in that aspect of the matter exerted no effect as between the District and the principal contractor.

There is disagreement in such authorities as there are as respects the standard by which the extent of value bestowed on the structure for which labor is furnished or in which material is used is to be determined. Some hold that as against the principal contractor and surety on such a bond as that in suit, as distinguished from a situation where a materialman sues a subcontractor at whose instance he has furnished such materials or labor, which under the principal contract the contractor obligated himself to supply, a recovery may be had for the reasonable value of the labor or material so furnished, only, even though the price agreed to be paid is in excess of this; others that the agreed price is recoverable in

the absence of a showing of fraud or collusion; still others that the stipulated price governs unless the defendant proves that such price is unreasonable. The cases are collected in an annotation in 123 A.L.R. 416. As noted therein, while some of the divergence in judicial thought may be accounted for because of the difference in the obligations assumed by the obligors in the several bonds examined in the decisions in these cases, they do not seem to place much emphasis upon that factor.

There is no occasion here to say what the rule should be in the case of a suit upon such a bond as the instant one against the principal and sureties thereon by the subcontractor. The situation here is one where the principal contractor in its capacity as principal on the bond, and its sureties, are asked to pay for material furnished by the plaintiff pursuant to an agreement made by the plaintiff with a subcontractor to which neither the principal contractor nor the District was a party and concerning which neither may have had any foreknowledge. The amount of recovery under such circumstances should on the one hand be not in excess of the reasonable value of what was contributed to the structure rather than determined by a price which in some instances might conceivably be arrived at as between a subcontractor and a materialman as a result of the influence of factors having no relation to this; and on the other hand no valid reason can be conjured for releasing such a materialman from his own agreement with the subcontractor to supply the material at a given figure, even though this be less than the reasonable value. The determination here is that the plaintiff, therefore, is entitled to recover the reasonable value of the material furnished by it and unpaid for, but not in excess of the same when computed on the basis fixed in the written agreement between it and the subcontractor. .

To be entitled to anything more than a judgment for nominal damages, it was, therefore, incumbent upon the plaintiff to establish what the reasonable value of the "materials used" and furnished by it was, and if it is to be awarded the amount claimed in its complaint, then that such reasonable value at least equalled such sum or exceeded it. No testimony has been offered on this point. "Damages are an essential element of the plaintiff's proof before he is entitled to recover." *Braithwaite vs. Lee*, 125 Conn. 10, 14. In this situation if

the parties are unable to stipulate that the fair value of such materials was the sum of $4,729.25 (the amount claimed to be owing by the subcontractor to the plaintiff), it will be necessary that a further hearing be had at which all may be afforded opportunity to offer evidence on that phase of the matter, from which the court may be enabled to determine the amount which the plaintiff is entitled to be awarded. The plaintiff should, also, introduce like evidence as respects the value of its contribution on defendants' theory that the same was labor furnished or performed, unless the defendants are willing to stipulate that if the factors of overhead, general expense and profits may be properly included, the reasonable value of the labor furnished is $4;729.25, leaving open for review the question of whether, on their theory, such items may be allowed. If the defendants wish to pursue their theory in this respect, the plaintiff should make available to defendants evidence showing in detail the various factors, by percentage or definite amounts, which together make up the 40 per cent of the unit prices or value of the finished stones, which counsel have agreed constitutes "overhead" or "general expense", unless, of course, a stipulation is possible. The purpose of these suggestions is to insure that all of the claims made by the parties will be before the Supreme Court of Errors in event of an appeal so that a new trial may be avoided if error is found. It is the court's understanding that for the purpose of computing interest on such amount as may be found to be owing plaintiff, the date of July 21, 1938, shall be taken to be that of the last shipment of "granites" to the subcontractor. If this is correct, plaintiff would be entitled to interest from August 30, 1938, in an action against the subcontractor since, according to the agreement between the plaintiff and the subcontractor, the latter was allowed 40 days after each shipment to pay for the value of the stones delivered from time to time. However, in a suit against the principal and surety on the bond in question it cannot be said that the defendants wrongfully detained the sum owing to plaintiff until at least the principal contractor was informed that the subcontractor had failed to pay plaintiff. While the evidence shows that the plaintiff furnished a statement indicative of what was claimed to be due it at a time more than 60 days following the date of its last shipment of finished stones, it does not disclose the precise day and month when this occurred. It will be necessary that the court be in-

formed on this score either through the channel of evidence or by stipulation of the parties. Interest will then be computed on the sum found due the plaintiff from a date following that when such statement was presented to the principal contractor, constituting a reasonable time thereafter, which latter period is found for the purposes of the instant case, to be 30 days from such date of notice to the principal contractor.

Defendants sureties contend that in event that the plaintiff is found entitled to recover, the judgment must be rendered against the principal contractor only as the principal on the bond, and not against them as sureties thereon, in this action, claiming in support of this proposition, the decision in *New Britain Lumber Co. vs. American Surety Co.*, 113 Conn. 1. The claim is apparently urged on defendants' premise that the bond in suit here is statutory, and it would have to be allowed if the determination here agreed with that contention. The *New Britain Lumber Co.* case, which was concerned with a bond given pursuant to section 1594c, *supra,* held only that where the plaintiff had failed to comply with such statute in neglecting to file statement of his claim within the 60 day period prescribed, not only his right against the principal contractor vanished, but as against the surety, as well. The ruling there is not applicable to the instant case, since here, under the conclusions noted *supra,* no question concerning a limitation of time for filing claim is involved. The portion of the condition with which concern is presently had (viz., the clause importing an obligation on the part of the principal contractor to "also pay for all labor performed or furnished and for all materials used, in the carrying out of said contract") is one of guaranty and the sureties as well as the principal are primarily liable to the extent of the obligation described in *Byram Lumber & Supply Co. vs. Page, supra. See, also,* many of the cases cited *supra,* most of which are concerned with the liability of the surety on the bonds considered in them. The judgment when entered will be against the defendants principal and sureties, jointly.